WILLIAM J. NEFF *vs.* INHABITANTS OF WELLESLEY.

Middlesex.   January 10, 1889. — February 27, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Town Officers — Agency — Master and Servant — Negligence — Due Care on part of Blind Person.*

Overseers of the poor, highway surveyors, and selectmen of a town, being the same persons, in using with its authority its almshouse farm partly for the support of its poor, partly for the maintenance of its highway department, and incidentally for the production of income, act as agents of the town; and the town is responsible for an injury caused by the negligence of a person employed by them on such farm.

At the trial of an action for such an injury sustained by the plaintiff, a blind man, while going unattended across a quiet side street in a city, by colliding with a wagon and horses driven by such employee, there was evidence that the plaintiff was seventy-three years old, and infirm; that he carried a cane and a crutch to assist him in walking; that he was very familiar with the particular crossing; that he heard the wagon coming along on a connecting thoroughfare, but supposed that it would pass by thereon; that his hearing was good, but he could not tell the direction of a team unless it was moving directly towards him; and that the next he knew, he was struck by the pole of the wagon as it was turned into such side street and approached the crossing. *Held*, that the question whether the plaintiff was in the exercise of due care was properly submitted to the jury.

No exception lies to the refusal to give an instruction as to the effect of a portion of the evidence bearing upon a single fact in issue.

TORT for personal injuries sustained by the plaintiff while travelling on foot in the highway, in a collision with a wagon and horses driven by a servant of the defendant, on February 1, 1887.   At the trial in the Superior Court, before *Brigham*, C. J., on the questions whether the driver of the horses and wagon was a servant of the defendant, for whose negligence it was responsible, and whether the plaintiff was in the exercise of due care, evidence was introduced tending to prove the following facts.

At the annual town meeting, held in March, 1886, the defendant town elected the same three persons as overseers of the poor, highway surveyors, and selectmen, and voted an appropriation for the support of its poor.   The defendant at that time maintained an almshouse, and owned a farm connected with

it on which it stood, together with horses, wagons, and other personal property there kept. The overseers of the poor thus elected proceeded to appoint a master of the almshouse at a stated salary, and gave him general authority to manage it and the farm, and to employ needed assistance. At the almshouse, besides the poor of the defendant, the poor of a neighboring town and certain state paupers were also boarded, under an arrangement with the overseers of the poor, both for a stated price per week. Drivers of teams working for the highway department of the defendant town were also boarded there, and the teams bought by the overseers of the poor with money belonging to the poor fund, which were in summer let out for hire to the highway department, were kept there when not in use elsewhere. The master of the almshouse was allowed to use such teams while under his care for any purpose that he deemed necessary or proper. The products of the farm were used for the support of the inmates and such boarders, and any surplus not needed for such purpose was sold or exchanged for other supplies to be used at the almshouse. All such sales and purchases were made by the master, and an account thereof was rendered by him to the overseers of the poor for their approval.

In the year 1886–87, the moneys received from the almshouse and farm exceeded the appropriation referred to, and together with it were paid out by the town treasurer for the support of the poor and the expenses of the almshouse, upon orders from the overseers of the poor, leaving a deficit to be made up by the defendant town.

In the winter of 1886–87 the master employed Hiram Crawford to work at the almshouse, and his bill for services until the end of February was approved by the overseers of the poor, and the town treasurer, upon their order, paid him the amount called for, which was credited on the poor fund account. On February 1, 1887, Crawford was directed by the master to go to Boston with two horses and a wagon to haul manure to be used on the farm, and returned with a loaded wagon through the city of Newton.

On that day the plaintiff, who was seventy-three years of age, infirm, and blind, came along the sidewalk of Centre Street, in Newton, and started to cross Richardson Street, a side street,

known by him to be a quiet one and little travelled by heavy teams. He carried a cane and a crutch to assist him in walking and in guiding himself. He was familiar with the location, having often been over the same place. At the same time Crawford was driving up Centre Street, the wagon weighing seventeen or eighteen hundred pounds, and the load of manure between two and three tons, the horses walking or going at a slow trot. When approaching Richardson Street, and about to turn into it from Centre Street, Crawford saw the plaintiff crossing, and, though he supposed him lame, did not know that he was blind. He called to the plaintiff to move on, checked his horses, and tried to pull in behind him; but the plaintiff stopped and turned instead of going ahead, and was struck by the pole of the wagon and knocked down when more than half-way across Richardson Street. The plaintiff testified that he did not hear Crawford call out; that he felt safe in making the crossing, as he was very familiar with it; that he heard a team on Centre Street, but supposed it was going straight up or down that street; that his hearing was good, but he could not tell the direction of a team unless it was moving directly towards him; and that the next he knew he was struck by the pole. The marks on his person showed that he was struck on the right leg, above the knee, behind.

The judge refused to rule, as requested by the defendant, that there was no evidence to go to the jury which would warrant them in finding a verdict for the plaintiff.

The defendant then requested the judge to rule and instruct the jury upon all the evidence as follows:

"1. That the verdict should be for the defendant.

"2. That the plaintiff cannot maintain his action.

"3. That the overseers of the poor, being elected and having their duties prescribed by the laws of the State, the defendant town had no direct control of the almshouse and its management, and therefore no responsibility for the acts or omissions of persons employed by said overseers in carrying on the affairs of said almshouse.

"4. That Hiram Crawford was not at the time of the alleged injury a servant or agent of the town so as to render said defendant town liable for his acts of negligence.

" 5. That the defendant town cannot be said to be engaged in a commercial enterprise for gain or profit because the overseers of the poor in the exercise of their discretion and judgment carried on certain farming operations on the land connected with the almshouse, applying the produce to the support of inmates, and selling or exchanging any surplus produce not needed for that purpose, adding the proceeds thereof to the fund set apart and appropriated for the support of poor.

" 6. That the evidence discloses no facts which would warrant the jury in finding that the defendant town was carrying on a commercial enterprise for gain or profit.

" 7. That the overseers of the poor of the defendant town cannot make said town liable for their acts, or the acts of their agents, unless such acts are specially authorized by a vote of the inhabitants of said town, in public town meeting assembled.

" 8. That a blind man who goes about unattended in the public streets takes more than ordinary risks, and must exercise more than ordinary care in avoiding danger from passing vehicles.

" 9. That the plaintiff, being blind and infirm, and going about the streets unattended, took more than ordinary risks, and was bound to exercise more than ordinary care to avoid danger from passing vehicles.

" 10. That if the plaintiff's negligence contributed in part to cause the accident, the plaintiff cannot recover, even if it appears that the defendant was also negligent.

" 11. If the plaintiff could by reasonable care have ascertained before attempting the crossing that a team was approaching, and its direction, he should have done so, and waited until the danger was past."

The judge refused these requests for instructions, and gave other instructions to the jury, which, so far as material, were as follows:

" It would be a question for the jury, upon finding the facts stated, and upon all other facts proved, with their reasonable explanations, whether the person who injured the plaintiff by his careless, negligent, or reckless driving of the team of the defendant was then, and in so doing, a servant of the defendant, and doing work for the immediate benefit and profit of the

defendant, and not in work which had any direct relation to the defendant's legal duties in the maintenance of its poor, or in a work necessary or reasonably incidental to the discharge of these duties. . . .

"If you should find these facts to be proved by a clear preponderance of the evidence, and you should also find that this Hiram Crawford was doing business not directly or incidentally related to the maintenance of the poor and the conducting of the almshouse and farm for the benefit of the poor of the town of Wellesley, then you might find that he was in legal effect a servant of the town, for whose carelessness upon the road, in driving the defendant's team, the defendant might become responsible. Otherwise, if you do not find these facts, the fundamental fact to be established by the plaintiff is not in the case, and you would go no farther. You simply would find that the responsibility of the town was not established, and that would lead you, of course, to a verdict for the defendant. . . .

. "If you find the responsibility, then you come to the question of care on the part of the plaintiff. . . .

"Now, in considering that question, you assume exactly what the law provides: that every person, of any age, having any bodily infirmity, has a right to the use of the highway, either on foot or with any kind of vehicle or horses. . . . But while I state that these are the rights, these rights are to be exercised with reference to the abilities of each person to take care of himself and to take care of the rights of others. A blind person has a right to walk the streets, walk anywhere where a person with full sight has a right to walk; a person who cannot hear has the same right to walk anywhere. A lame person has a right to walk anywhere. But, in view of the incapacities for taking care of himself which a blind man has, and of which he must be conscious, the exercise of ordinary prudence and caution would require him to conduct his care with reference to his inability to see. And if there was an inability to hear, so that a man could not take warning by the hearing of what was about him, or likely to put him in jeopardy, his wariness, in view of his infirmity of hearing, would be nothing more than the ordinary prudence and caution of a man who cannot take care of himself by listening. . . . A man travelling has a right to sup-

pose that the persons whom he sees on foot, unless they appear to be unusually incapable of taking care of themselves, can take care of themselves as men ordinarily do. If he sees that a man is blind, or if he knows the fact by an acquaintance with him, sees that he is deaf, or knows the fact by an acquaintance with him, he should take that into account in driving. But if he knows nothing and sees nothing to indicate that a person crossing a highway upon which he is travelling cannot take as much care of himself as men ordinarily do, he has a right to drive upon the supposition that he will do what other persons will ; upon the supposition that he will see the team approaching; upon the supposition that he will hear the team approaching ; simply because there is nothing which to the driver brings notice that the noise or the sight of his team will not afford the same notice to the foot traveller that they would to all persons.

" Applying these considerations, if you find the responsibility of this town is established, was the plaintiff in the exercise, in view of his infirmity of sight and his infirmity of body, of ordinary prudence and caution in being where he was at the time when he was struck by the defendant's team. Taking into account what you have seen of him, of his intelligence, taking into account his description of how much physical strength he had, and what control he had of himself and of his sight, you will determine that question, not disregarding the particular facts out of which this collision arose. . . .

" This plaintiff says, ' This man Crawford was the servant of this town of Wellesley, as he might have been the servant of any store-keeper, farmer, or mechanic of the town of Wellesley, and when I was exercising all the care which a man like me could be reasonably asked to use, this man, seeing and knowing enough to require him to adapt the driving of his team to my rights on the crossing, ran against me ; no want of care on my part contributed to my injury; it was solely due to the misconduct of Crawford.' The plaintiff's attitude in this case is in effect thus stated, and that attitude he must maintain, so as to satisfy you that Crawford, and Crawford only, by his misconduct in the driving, caused this injury."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

C. E. Washburn, for the defendant.

C. Abbott, for the plaintiff.

KNOWLTON, J.   To determine whether the defendant town is liable for the negligence of Crawford in driving its team, we must answer two questions: First, Was the business in which Crawford was employed such that engaging in it would subject a city or town to liability for negligence in conducting it? Secondly, Was he a servant of the town, or was he a representative of a board of public officers acting independently, merely in the performance of a public duty?

It is a general rule, that a town is not liable for the negligence of its agents or servants in a matter in which it has no interest, and which has no direct or natural tendency to injure any individual in person or property, and which it has in charge solely in the performance of a public duty imposed upon it by law. *Hill* v. *Boston*, 122 Mass. 344.   *Tindley* v. *Salem*, 137 Mass. 171, 172.   Whether this rule should be held to apply to the use of a farm for no other purpose than the support of paupers who are a charge upon the town, it is unnecessary to decide.   For the jury have found that paupers whose support was chargeable to another town, and to the Commonwealth, were boarded for pay upon the defendant's farm, and that persons employed to work upon the highways were also boarded there, and that horses were kept there principally for use in repairing the highways.   When property is used or business is conducted by a town principally for public purposes, under the authority of the law, but incidentally and in part for profit, the town is liable for negligence in the management of it.   *Oliver* v. *Worcester*, 102 Mass. 489.   *Worden* v. *New Bedford*, 131 Mass. 23.   *Tindley* v. *Salem*, 137 Mass. 171. .

This case clearly does not fall within the rule which we have stated.

Nor can it be held that the use of the farm by the defendant was illegal, so as to exonerate the town from liability on account of it.   It was not an appropriation of public money to a commercial enterprise conducted primarily for profit.   The income received from the farm was, apparently, incidental to the use of it in the support of paupers having a residence in the town, and in boarding horses and men employed upon the high-

ways which the town maintained. A city or town may make any reasonable provision for the support of paupers, or for sustaining other public burdens imposed upon it, and for that purpose may manage a farm which produces more crops than are needed for the food of the paupers, and may sell or exchange the surplus. It may transact business outside of the authority expressly given it, if the business is incidental to the performance of its public duties.

Overseers of the poor are public officers, who commonly act under the authority of the law, and not as agents of a town. But in some matters they may represent the town as its agents. *New Bedford* v. *Taunton*, 9 Allen, 207. They have the care and custody of the paupers in their respective cities and towns, and are to see that they are suitably relieved, supported, and employed; but the city or town is to direct the manner and provide the means of supporting its paupers. Pub. Sts. c. 84, § 2. If a town sees fit to buy a farm, and cultivate it in connection with an almshouse, there is nothing in the statute which gives the overseers of the poor a right to manage it without authority from the town.

In the case at bar, the same persons held the offices of overseers of the poor, highway surveyors, and selectmen. In one capacity they had the care and oversight of the paupers; in another, of the roads and bridges; and in the third, of many of the other prudential affairs of the town. The farm was used in part for the support of the paupers, of whom they had charge as overseers of the poor; in part for a purpose which was connected with the maintenance of the highways, which were in charge of the highway surveyors; and in part for the production of income, a use which was outside of the express authority of any board of public officers, and was under an assumption. of authority that seems to have been approved and ratified by the town. The three persons who managed the farm in the interest of the town for these several purposes cannot be deemed to have been acting merely as a single board of public officers, but they represented the defendant in different capacities, such as to make them in that business the defendant's agents. The facts which the jury were required to find in order to return a verdict for the plaintiff conclusively established the town's liability for

Crawford's acts, and the defendant's requests for instructions upon this point were rightly refused, and the instructions given were sufficiently favorable to the defendant.

It is not, under all circumstances, negligence for a blind person to walk unattended upon a public street. *Smith* v. *Wildes*, 143 Mass. 556. *Sleeper* v. *Sandown*, 52 N. H. 244. There was evidence proper for the consideration of the jury upon the question whether the plaintiff was in the exercise of due care.

The ninth and tenth requests for rulings were rightly refused, and the jury were properly instructed upon the subject to which the requests referred. The plaintiff was only bound to use ordinary care; but in determining what was ordinary care the jury were called upon to consider his blindness and other infirmities, and all the circumstances which bore upon the question what care was reasonably necessary to insure his safety.

The eleventh request assumed, as a hypothesis merely, that the plaintiff could have ascertained " that a team was approaching, and its direction"; it called for an instruction as to the effect of only a part of the evidence bearing upon a single fact in issue, and the judge might properly refuse it. *McDonough* v. *Miller*, 114 Mass. 94.                          *Exceptions overruled.*