MARY W. DUGGAN *vs.* INHABITANTS OF PEABODY.
JAMES DUGGAN *vs.* SAME.

Essex.    November 3, 1904. — February 14, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Municipal Corporations,* Officers and agents, Liabilities, Powers.

*Semble,* that it is not within the ordinary authority of the superintendent of streets of a town as a public officer to purchase real estate to be paid for by the town and used as a stone quarry or to take charge of such a quarry belonging to the town and carry on the business of quarrying and crushing stone there, even for use upon the public streets.

Where a town owns and maintains a stone quarry, quarrying and crushing stone there for use upon its public streets and from time to time making sales of broken stone and turning the proceeds into the town treasury, the town is liable to a person injured by a piece of stone thrown from a blast in the quarry due to the negligence of the superintendent of streets in charge of the work.

Where a town owns and maintains a stone quarry for the purpose of quarrying and crushing stone for use upon its public streets, incidental sales of broken stone for profit are not *ultra vires* but legitimate.

Where a town owning and maintaining a stone quarry for the purpose of quarrying and crushing stone for use upon its public streets carries on for years in an open way the business of selling broken stone from the quarry, and this is annually referred to in the reports of the selectmen and the town treasurer made to the inhabitants at town meetings and presumably accepted, and the reports also are published and distributed among the inhabitants, this is sufficient evidence that the business of selling broken stone is conducted with the approval of the town and that the acts of its agents appearing in the reports have been ratified.

TWO ACTIONS OF TORT, one by Mary W. Duggan for personal injuries from being struck on the head by a piece of stone from a blast in the stone quarry of the defendant maintained for the preparation of stone to be used in repairs of highways, and the other by James Duggan, husband of Mary, for the loss of her services and companionship by reason of the injuries.    Writs dated June 27, 1901.

In the Superior Court the cases were tried together before *Sherman,* J., who refused to order verdicts for the defendant or to make certain other rulings requested by the defendant.    The jury returned a verdict for each plaintiff, in the first case in the sum of $1,000 and in the second case in the sum of $500.    The defendant alleged exceptions.

*J. J. Cahill & D. N. Crowley*, for the defendant.

*W. H. Niles*, for the plaintiffs.

KNOWLTON, C. J. The plaintiff in the first case, while on her own premises not far from the defendant's quarry, was struck on the head and injured by a stone thrown from a blast in the quarry, and her husband James Duggan suffered damages on account of her injuries. It was conceded by the defendant at the trial, that she was in the exercise of due care, and that the blast was negligently exploded.

One Hooper, who was the superintendent of streets duly appointed by the selectmen, was in charge of the work, and the only question is whether the defendant is liable for his negligence. For his negligence as a public officer, acting under the authority of law in the performance of the duties of his office in regard to matters which involve no element of profit or income to the town, but were imposed solely in the interest of the general public, the town is not liable. *Hafford* v. *New Bedford*, 16 Gray, 297. *Walcott* v. *Swampscott*, 1 Allen, 101. *Buttrick* v. *Lowell*, 1 Allen, 172. If the enterprise in which he was engaged was conducted primarily as a work of the town, imposed upon it for the benefit of the public, but in part as a source of income, a commercial element was introduced which made him to that extent at least an agent of the town, and which deprived the town of the exemption from liability for negligence which pertains to the performance of duties that are strictly public.

The purchase of real estate, to be paid for by a town and used as a stone quarry, is not ordinarily within the authority of a superintendent of streets acting merely as a public officer, and as such an officer he probably would have no right to take in charge such a quarry belonging to a town to carry on the business of quarrying and crushing stone there, even for use upon the public streets, unless the town authorized or permitted him to do so. In the present case the town has for years been making sales of broken stone from this quarry. In the year ending January 15, 1898, there were three sales amounting to $11.50. In the next year there were seven sales amounting to $189.37, in the next year six sales amounting to $460.88, in the next year twelve sales amounting to $1,193.65, and in the year of the accident there were twenty-four sales amounting to $352.40. The

money received for these sales went into the hands of the town treasurer, some of it by payments to him directly and some through the superintendent of streets. In his annual reports to the town, the treasurer accounted for all these moneys, and the amounts so received also appeared in the annual town report published by the selectmen. We think these facts bring the case within the principles stated in *Collins* v. *Greenfield*, 172 Mass. 78, *Neff* v. *Wellesley*, 148 Mass. 487, 493, and *Worden* v. *New Bedford*, 131 Mass. 23. See also *Waldron* v. *Haverhill*, 143 Mass. 582; *Sullivan* v. *Holyoke*, 135 Mass. 273, 277; *Oliver* v. *Worcester*, 102 Mass. 489, 500; *Norton* v. *New Bedford*, 166 Mass. 48, 52; *Hawks* v. *Charlemont*, 107 Mass. 414; *Aldrich* v. *Tripp*, 11 R. I. 141.

In *Neff* v. *Wellesley*, *ubi supra*, the principle is stated as follows: "When property is used or business is conducted by a town principally for public purposes, under the authority of the law, but incidentally and in part for profit, the town is liable for negligence in the management of it." In *Collins* v. *Greenfield*, *ubi supra*, the plaintiff's intestate was injured while at work about a stone crusher in preparing stone for use in macadamizing streets. Some income was received from the business, derived in part from payments of a street railway company and in part from small sales of crushed stone. The work was in charge of the superintendent of streets. It was held that the town was liable for his negligence. The same principle is applied in *Worden* v. *New Bedford*, *ubi supra*, and in other cases. In *Murphy* v. *Needham*, 176 Mass. 422, the plaintiff's intestate was injured while engaged in getting out gravel in a gravel pit, and the facts in regard to the crushed stone were held to be too remote to affect the plaintiff's case.

It was contended in *Neff* v. *Wellesley* and in *Worden* v. *New Bedford*, and in other cases, that there was no liability because the use of the property for profit was *ultra vires ;* but the defence was not sustained, as it was held that an incidental use resulting in profit, from property acquired and held primarily for a public purpose, was legitimate. See also, as overruling this defence on another ground, *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177. It is objected that there was no vote of the town authorizing the sale of crushed stone, or particularly referring to it.

But the business was carried on for years in an open way, and was annually referred to in the reports of the selectmen and town treasurer, made to the inhabitants in town meeting assembled, and presumably accepted by votes of the town. The reports were also published and distributed among the inhabitants. This is sufficient evidence to warrant a finding that the business was conducted with the approval of the town, and that the acts of its agents appearing in the reports were ratified. *Arlington* v. *Peirce*, 122 Mass. 270. The case is very different from *Wormstead* v. *Lynn*, 184 Mass. 425, in which the plaintiff, in an action of contract against the city, relied on a previous habit of the superintendent of streets to make certain contracts without authority, which, so far as appeared, never had been brought to the knowledge of the city council or ratified in any way by municipal action of the defendant.

In this case we have no occasion to consider whether there is a special liability founded on the use of an explosive which is intrinsically dangerous to persons and property in the vicinity who are not connected with the work. We are of opinion that the cases were properly submitted to the jury.

*Judgment for the plaintiffs.*