## J. W. SMITH *vs.* JAMES W. WILDES & another.

Suffolk.    Nov. 16, 1886. — Feb. 23, 1887.    HOLMES & GARDNER, JJ.,
                              absent.

In an action against the keeper of a shop for personal injuries occasioned to the plaintiff, a blind man, while walking, unattended, along a street in a city, by falling into a hole in the sidewalk of the street in front of the shop, left by removing a trap-door for the purpose of raising cases of goods from the basement of the shop, there was evidence that the plaintiff was forty-nine years old, used to going about alone, and well acquainted with the particular locality, and that the defendant placed no barrier about the hole, and no person to warn passers by of the danger, although one side of the hole was guarded by the building, and on each of the other three sides was a man engaged in hoisting goods from the basement; that the plaintiff, while walking along, came against one of the men, did not know what the obstacle was, and did not stop to examine it, but, supposing there would be a safe passage between the obstacle and the building, without asking any question, turned to the right and walked into the hole. *Held,* that the questions of due care on the part of the plaintiff and of negligence on the part of the defendant were for the jury.

TORT for personal injuries. Trial in the Superior Court, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows:

It appeared that the defendants, who were dealers in furniture and upholstery goods, were, at the time of the injury complained of, tenants in possession of a store, No. 24 Bromfield Street, in the city of Boston, of which and of a basement underneath the same they had sole control; that in front of the store, in the sidewalk, was an opening, which, when not in use, was covered by a wooden trap-door on a level with the sidewalk; that the stairway inside the store from the first story to the basement was so constructed that it was occasionally impossible for the defendants to carry up or down the stairway the larger cases in which their goods were bought, and in which they remained stored in this basement until needed for sale up-stairs; that when it was necessary to lower such exceptional cases into the basement or raise them therefrom, there was no way of doing this except by lowering or raising them through this trap-door in the sidewalk; and that, when this trap-door was opened for this purpose, it left an opening in the sidewalk about three

feet in width from the line of the building outward, about six feet long, and about nine feet deep.

It further appeared, that, upon the day of the accident, the defendants had caused the trap-door to be opened for the purpose of removing from the basement certain large boxes or cases which had recently been sold, and which could not be removed from the building in any other way ; and that the cover of the cellar door was folded up and placed in front of said hole, leaving only about fifteen inches of sidewalk unoccupied between it and the curb.  At the outer corner of the hole nearest Tremont Street, one Carr, an employee of the defendant, was standing on the covering of the cellar-way, with his side towards Tremont Street, looking down the hole, and was, at the moment of the accident, engaged with the rope in his hand helping to pull up cases ; and opposite the middle of the hole a man named Murphy, who had purchased the boxes, was standing, and was also assisting in the removal.  At the lower end of the hole nearest Washington Street another employee of the defendant was standing, who was also engaged in assisting in the removal of the boxes.  Between them and the street was a passageway of some fifteen to eighteen inches of sidewalk in width, and in the street directly opposite the store were a horse and wagon, the horse facing Tremont Street, with the driver sitting on the tailboard.

According to the plaintiff's testimony, it appeared that he was totally blind, and had been so for over twenty-five years ; that he had received a special education at the Perkins Institute for the blind, and had been connected with said institute for twenty-five years ; that he was forty-nine years old at the time of the trial, and he had been taught and had learned to rely upon his other senses in walking the streets unattended, in the discharge of his business as a piano-tuner and general superintendent of that department, and had never had any accident except occasional collisions with lamp-posts and sides of buildings, and a fall of sixteen feet from a window ; that, some ten years prior to the accident, the Perkins Institute had had an office at No. 20 Bromfield Street for about thirteen years, to his knowledge, about two doors below the defendants' place of business; that the plaintiff, during that time and prior to the accident, had had frequent

occasion to go to the office of the institute, and was, in that and other ways, familiar with this locality in Bromfield Street; that there was, in connection with this office of the institute, a trap-door or cellar door similar to that where the accident happened; that the institute gave up the above office about ten years ago, and since then he had not been upon Bromfield Street in this particular vicinity so often as before, but well knew the locality, and could always find the place readily; and that he knew it by the driveways and trap-doors, and such things, that he passed over.

The plaintiff further testified, that, on the day of the accident, he came over from the institute at South Boston on business; that he stopped on Tremont Street, at a certain store; that he thence proceeded along Tremont Street, and then turned down Bromfield Street, on the same side as the defendants' store; that he walked along, in his usual manner, unaccompanied by any person, but wearing conspicuous blue glass side-bow spectacles, and carrying a cane in his left hand (by which he directed his course), and tried to avoid any obstacle that might be in the way, until he came in contact with some obstacle, but did not know what the obstacle was; that he did not stop to examine it; that he supposed a case or cases were standing on the curb ready for a train; that he " supposed there would probably be an open or safe passage to the right," between it and the building; and that, without asking any questions, and without anything being said to him, he turned out to the right, and walked ahead, and, the first he knew, he was falling down a hole.

It appeared that the obstacle which he struck was said Carr, who was, as above stated, standing at one corner of the hole, and who, when struck by the plaintiff, was leaning over looking into the cellar, and, without looking up, moved farther along, and said and did nothing to restrain the plaintiff; and that, prior to the plaintiff's falling in, no one of the defendants' employees saw his glasses or his stick, or knew or saw anything to indicate that he was blind, but the defendant Wildes did see both stick and glasses as the plaintiff approached the hole, but was inside the store, and from his position could not get warning to him in time to prevent the accident.

The opening in the sidewalk into which the plaintiff fell, and which was half the width of the sidewalk, was not guarded by any kind of permanent or temporary rails, guards, or appliances of any description, and no specific instructions had been given by the defendants to guard said opening.

There was evidence that, after the injury, the plaintiff seemed dazed, and asked where he was, and, being told that he was at the store of J. W. Wildes and Company, on Bromfield Street, replied interrogatively, " Bromfield Street? " in a tone of surprise, and then asked to be taken to the City Hall, where he drew some money, and then was taken to the horse cars by an employee of the defendants, and sent to his home.

At the conclusion of the plaintiff's case, and again at the close of all the evidence, the defendants requested the judge to rule that the action could not be maintained, and to direct a verdict for the defendants; which the judge refused to do.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*W. Gaston & C. L. B. Whitney*, for the defendants.

*P. West*, for the plaintiff.

C. ALLEN, J. The defendants caused a trap-door to be opened, leaving a hole in the sidewalk of a much frequented street, and put up no rail, rope, or other barrier to keep persons from walking into the hole, and had nobody there whose special business it was to look out for and warn persons who might be approaching. Those who were at work there were there for the purpose of doing the work, and not for the purpose of warning passers by. Under such circumstances, the question of the defendants' negligence must be left to the jury.

Nor can we say, as matter of law, that there was such negligence on the part of the plaintiff as to prevent his recovery. He was forty-nine years old, apparently intelligent, used to going about alone, well acquainted with this particular locality, and he had a right to rely to some extent upon the supposition that pitfalls would not be left unguarded in the sidewalk. It cannot be laid down, as a universal rule, that it is negligence for a blind man to walk the streets of Boston unattended. Indeed, so broad a proposition as this is not contended for by the defendants. Under all the circumstances disclosed in the present case,

it was proper to leave the question whether the plaintiff was negligent or not to the jury. *Davenport* v. *Ruckman*, 37 N. Y. 568. *Harris* v. *Uebelhoer*, 75 N. Y. 169. *Sleeper* v. *Sandown*, 52 N. H. 244. The instructions given to the jury are not reported, and it is to be presumed that they were proper.

<em>Exceptions overruled.</em>