CHARLES O. BALCOM, Appellant, v. CITY OF INDEPENDENCE, Appellee.

TRIAL: Jury Questions—Negligence—Injury to Blind Person. A jury question is presented whenever there may be reasonable difference of opinion as to the inferences and conclusions to be drawn from the facts proven. So held with reference to the facts attending the falling of a blind man into a street excavation.

NEGLIGENCE: Contributory Negligence—Jury Question. If the question of the contributory negligence of a blind man in falling into an unguarded excavation in a public street is for the jury, it necessarily follows that the question of the negligence of the city in leaving the excavation unguarded is for the jury.

MUNICIPAL CORPORATIONS: Negligence—Street Excavations— Injury to Blind Person. The act of a city in allowing an excavation in a public street to remain unguarded, may be negligent as to one who can see, and who by absolute care might avoid it. It necessarily follows that such act may be negligent as to a blind person.

MUNICIPAL CORPORATIONS: Negligence—Street Excavations— Blind Person—Degree of Care. While requiring a light for him who can see an excavation in a public street when there is light, proves that there is a duty to protect those who, for any reason, cannot see, it does not follow that, because one precaution will save harmless those who are only temporarily without sight, there may be omitted that which will as effectively protect those who can never see.

NEGLIGENCE: Acts or Omissions Constituting—Duty to the Blind. A blind man should use more precaution because he is blind, but whosoever does that which may injure him should use more precaution than would be necessary were the one to be affected not blind. The duty to avoid receiving and doing injury is correlative.

MUNICIPAL CORPORATIONS: Negligence—Street Excavations— Blind Persons—Ordinary Care. A municipality, in making excavations in its public streets, owes only ordinary care to a blind pedestrian; but, in determining whether such care was exercised, the jury should take the blind man's infirmity into consideration.

MUNICIPAL CORPORATIONS: Negligence—Use of Streets by Blind Persons—Knowledge of Use—Effect. There is no room for

the contention that a city was under no obligation to take precautions specially adapted to protect the blind from injury from a street excavation, because *not bound to anticipate* use of the street by the blind, when plaintiff, a blind person, had continuously used the street in question, with the knowledge of the city, for ten years.

NEGLIGENCE: Contributory Negligence—Unbarricaded Walks—Failure to Make Inquiry as to Condition. One, though blind, is not guilty of negligence *per se* in going upon an unguarded, unbarricaded walk without making inquiry as to its condition.

MUNICIPAL CORPORATIONS: Negligence—Public Streets—Condition—Presumption. Principle recognized that a pedestrian has the right to presume that the city has kept its streets in a reasonably safe condition for travel.

MUNICIPAL CORPORATIONS: Negligence—Use of Streets—Unattended Blind Person. It is not negligence *per se* for a blind man to walk unattended on a public street.

MUNICIPAL CORPORATIONS: Negligence—Use of Street by the Blind—Negligence Per Se. A blind man is not guilty of negligence *per se* who goes upon an unguarded walk, though unattended, and falls into an opening therein, and who for ten years has regularly traveled along said street, and has usually, by barricade or bystanders, been warned of excavations in the streets.

*Appeal from Buchanan District Court.*—F. C. PLATT, Judge.

WEDNESDAY, DECEMBER 13, 1916.

ACTION to recover for personal injury of plaintiff, charged to be due to negligence of defendant. A verdict was directed against plaintiff on the ground that the defendant was not negligent, and that the plaintiff was guilty of contributory negligence. Plaintiff appeals. *Reversed and Remanded.*

*Cook & Cook,* for appellant.

*Chappell & Todd,* for appellee.

SALINGER, J.—I. Main Street in the defendant city is a paved street 80 feet wide, and runs east and west. Fourth

Avenue crosses it. On the day of the accident, the city began a ditch at the intersection of Fourth Avenue and Main Street, running south from the south line of that street on Fourth Avenue for something like a block. It was some 7 feet deep, and of sufficient width to enable defendant to extend its water mains. Plaintiff is blind, and walked by the aid of tapping in front of himself with his cane. As he was walking along the south line of Main Street, and when he reached the point where the ditch began, he fell into the same and was injured. At the time of the accident, no one was near the south line of Main Street, where the ditch began, and the nearest workman was about a block south of that point. At the point where the accident occurred, the ditch was not guarded by barriers nor in any other way. It is, however, true that the end of the ditch was far enough to the south so that, if plaintiff had crossed Fourth Avenue at its intersection with Main Street, without deviating from an exact line east and west, he would have kept to the north end of the ditch and have passed in safety.

Appellee says, in support of the ruling directing verdict, that, if plaintiff sustained any injury, "it was caused by his deviating from the pavement, especially laid for foot passengers," and that, if he had kept on the pavement, he would not have fallen into the ditch. That is true. It is equally true, however, that, if the city had put some boards across the ditch for a distance of 5 or 6 feet south of the south line of Main Street, or erected almost any sort of a barrier on the south line of the street and across the north end of the ditch, then, no matter how much plaintiff had in reason deviated from walking exactly east, he could not have fallen into the ditch.

II. We concede that a verdict finding that defendant was not negligent could have been sustained. But what we are concerned with is whether the trial court was justified in so finding, as matter of law.

Whenever there may be a reasonable difference of opinion

as to the inferences and conclusions to be drawn from the facts, there is a question for the jury. It is to draw the conclusions from both disputed and undisputed facts. Beach, Contributory Negligence (3d Ed.), Sec. 450.

1. TRIAL: jury questions: negligence: injury to blind person.

We say, in *Hunter v. Colfax Cons. Coal Co.,* 175 Iowa 245, "there cannot be contributory negligence unless there be negligence to contribute to." Whenever, then, we have ruled that it was a jury question whether one injured by an obvious defect was guilty of contributory negligence, we have, of necessity, held that it was a jury question whether the creation of such defect constituted negligence.

2. NEGLIGENCE: contributory negligence: jury question.

On this reasoning, we have held the question of negligence to be for the jury: where the defect was a spike protruding from a plank in a sidewalk some 1½ or 2 inches (*Rusch v. City,* 116 Iowa 402, at 403); where a sidewalk was obstructed by planks kept there for some 5 minutes, and which rose some 5 or 6 inches above the level of the walk (*Kaiser v. Hahn,* 126 Iowa 561, at 562); where tracks were laid in a public street with the space between the main rail and guard rail wider than is usual or necessary, without properly filling below the balls of the rails, so that a foot was crushed before it could be extricated from between these rails in which it had been caught (*Goodrich v. Burlington, C. R. & N. R. Co.,* 103 Iowa 412); where there was a defect into which plaintiff fell because he slipped (*Kendall v. City,* 73 Iowa 241, at 248); where the sidewalk was "badly out of repair" (*Sachra v. Manilla,* 120 Iowa 562, at 568); where the injury resulted because one walking with the plaintiff stepped upon and raised a loose board (*Barnes v. Town,* 96 Iowa 675, 681; *Bailey v. City of Centerville,* 115 Iowa 271, at 272); where several boards were out of place, a number were out and some of them loose, and their looseness was noticeable (*Cox v. City,* 111 Iowa 646); where a hole in a plank walk was made by the breaking out of one plank, and

plaintiff fell into the hole because his foot slipped (*Brown v. Incorporated Town,* 122 Iowa 640, at 642); in a case of a hole in a crossing, which crossing was a walk about 3 feet wide, of boards some 2 inches thick and 12 inches wide, and about 8 feet of the middle board was broken and removed, so that, at about the middle of the broken space, there was a hole or depression between the two outside boards, variously estimated by the witnesses as from 2 to 12 inches in depth, and the accident occurred after nightfall (*Nichols v. Incorporated Town,* 96 Iowa 388, at 392); where the walk was of brick, in which many bricks were out of place, and in which several holes had been dug, the particular hole into which plaintiff's foot slipped as she stepped on a brick next to it being about a foot in diameter and 3 or 4 inches deep (*Houseman v. City,* 124 Iowa 510). This case holds further that, if a slip throws one into a defect that would have done no harm had there been no slip, it does not settle as matter of law that there was contributory negligence. And see *Nichols v. Incorporated Town,* 96 Iowa 388, at 392; *Brown v. Incorporated Town,* 122 Iowa 640, at 642; *Kendall v. City,* 73 Iowa 241, at 248. As pointed out in *Rusch v. City,* 116 Iowa 402, at 403:

"Few of the thousands using sidewalks would be likely to think of defects (such as a spike protruding some 2 inches). Pedestrians intent on other matters, and looking out for their general course, usually act on the presumption that the city has performed its duty, and is maintaining its streets in a reasonably safe condition. While bound to make use of their senses and exercise the caution ordinarily displayed by persons of prudence, they are not required at their peril to discover every defect, even though open and visible."

In *Kaiser v. Hahn,* 126 Iowa 561, it was held matter for consideration that one injured by planks 6 inches thick lying across the walk, was dazzled by the sun shining in her eyes and on the planks, and for that reason did not see them, and

that it was properly left to the jury whether, under the circumstances, plaintiff was guilty of contributory negligence.

## 2a.

So far as these cases rule, plaintiff needs no aid from his blindness. We fail to see any substantial distinction between the obviousness of planks 5 or 6 inches thick lying across a walk, or large holes in the same, and a narrow open ditch beginning on the line of a walk and so close to it as that the slightest failure in concentrating thought upon the walk, or diversion, or the slightest deviation from walking in an exactly straight line, will cause the passerby to fall into it. A decision that falling over a perfectly obvious obstruction may be found not to constitute contributory negligence, though it was possible to avoid the fall, holds, of necessity, that one who digs a pit into which another falls, might be found guilty of negligence, though absolute care would have avoided falling into same. In other words, we seem fairly to have held what warrants the conclusion that putting this ditch in that place, without guard or protection of any sort, would leave negligence at least a question of fact, if plaintiff had not been blind. And if this is so as to those who can see, it certainly was not less negligent because its consequence was to injure a blind man. If the care used will not, as matter of law, protect the city from responding to those who are not blind, of course it at least remained a jury question whether such care was sufficient to protect the blind.

3. MUNICIPAL CORPORATIONS: negligence: street excavations: injury to blind person.

Another line of reasoning re-enforces this position: It should not be disputed that the city was bound to do what in reason would make it safe for those not blind to pass over this walk on a dark night. If one not blind had fallen into this ditch, because it was left without light or barrier on a dark night, it should not be denied that the absence of

4. MUNICIPAL CORPORATIONS: negligence: street excavations: blind person: degree of care.

light at least made a jury question on whether there had been negligence. And yet one who has eyesight is, in the case suggested, blind. To be sure, the light would not promote the safety of a blind man; but that is adventitious. We shall have occasion to discuss whether the same acts will constitute ordinary care as to the blind as well as the seeing. It suffices to say, for present purposes, that, while requiring a light for him who can see when there is a light, proves that there is a duty to protect those who for any reason cannot see, it does not follow that, because one precaution will save harmless those who are only temporarily without sight, there may be omitted that which will as effectively protect those who can never see. Concede that there is a duty to protect those who for any reason cannot protect themselves by the use of sight, and you admit a duty to do that which will effectuate protection, without reference to why sight will not afford protection. Concede that there must be a light for those who have eyesight, when without the light the eyesight would be no protection, and it follows that there is a duty to guard those who cannot see, though a light be furnished, by guarding them with that which will be as much a protection to them as is the lamp to one whose inability to see is due to the darkness of the night.

2b.

Appellee is, in effect, driven to the position that, because the blind should do more than the seeing to avoid being injured, the city need not take as much care to protect the blind as to protect those who can see. Some color is given this argument because the courts, in laying down the undoubted proposition that due care was exacted of the blind as well as the seeing, and that ordinary care might require more of the blind than those who had their sight, have failed to make clear that the obligation was correlative, and that, therefore, even as the blind man should use more precaution

5. NEGLIGENCE: acts or omissions constituting: duty to the blind.

because he was blind, whosoever did that which might injure him should use more precautions than would be necessary where the one to be affected was not blind. Part of the holding in *Yeager v. Incorporated Town of Spirit Lake,* 115 Iowa 593, is that all required of a blind man who falls on a defective sidewalk is the ordinary care due under the circumstances.

One holding of *Hill v. City of Glenwood,* 124 Iowa 479, is that the care required of the blind is the ordinary and reasonable care of one of average prudence and foresight; that there is no precise definition of ordinary care; but it may be said that it is such care as an ordinarily prudent person would exercise under like circumstances, and should be proportioned to the danger and peril reasonably to be apprehended from a lack of proper prudence; that such blind person is not required to exercise a higher degree of care and caution than a person ordinarily would be expected or required to use, had he full possession of his sense of sight; that the plaintiff's blindness is simply one of the facts to which the jury must give consideration, in finding whether he did or did not act with the care which a reasonably prudent man would ordinarily exercise when burdened by such infirmity; that the blindness should be considered; and that the finding on whether ordinary care and prudence was exercised should rest upon so considering, and also considering all other surrounding facts and circumstances. True, in arriving at what constitutes ordinary care, there must be considered all conditions which surround those who are charged with a failure to exercise, or defend with having used, ordinary care. *Cooke v. Baltimore Traction Co.* (Md.), 31 Atl. 327, 329; *Holly v. Boston G. L. Co.,* 8 Gray (Mass.) 123, 131; *Tibby v. Missouri Pac. R. Co.,* 82 Mo. 292. And this includes consideration of blindness, other infirmities, and all circumstances bearing on the question as to what care was reasonably necessary to insure his safety. *Neff v. Town of Wellesley* (Mass.), 20 N. E. 111. The *Yeager* case, supra, holds that, while such

6. MUNICIPAL CORPORATIONS: negligence: street excavations: blind persons: ordinary care.

is the standard, the requirement of ordinary care is not "ordinarily" increased by defects of sight, and such defects do not, of themselves, prevent one from going into a public street. In the *Hill* case, supra, after affirming that more might be required to constitute ordinary and reasonable care where the plaintiff is blind, it is said that yet "the streets are for the use of the general public, without discrimination; for the weak, the lame, the halt and the blind, as well as for those possessing perfect health, strength and vision;" and the law casts upon one no greater burden of care than upon the other. While ordinary care is all that is required, what is such care differs under varying circumstances, and more will be required to constitute it in one case than in another. *Graham v. Town of Oxford,* 105 Iowa 705, 708; *Hoover v. Town,* 110 Iowa 571, at 573, 574. It is held, in *Winn v. City of Lowell,* 1 Allen (Mass.) 177, and 1 Thompson, Negligence (2d Ed.), 316, that one with defective eyesight is under obligation to do more for maintaining ordinary care than one who is not thus afflicted. And so in *Foy v. City* (N. C.), 35 S. E. 609. *Kaiser v. Hahn,* 126 Iowa 561, 564, holds that, while the blind do have the same right to use the streets as others have, one thus afflicted was bound to do more for accomplishing ordinary care than is required of one who has full possession of his faculties.

It is easily seen how all this emphasis upon the sound position that a blind person must do more, to be in the exercise of ordinary care, than would be required if he had all his faculties, has led to the impression that one who injures a person under such disability need have no regard for it, and need do no more than would be required for the protection of one who can see. Careful analysis of these holdings, however, makes clear that they involve no more than emphasis upon half of a correct proposition, and do not establish one rule for a blind plaintiff and another for those whose act injures him. And we say in the *Hill* case that both are required to exercise the reasonable care of a person

of average prudence and foresight. Unless this be so, it would work out that, while the blind have equal rights in the use of the streets upon ordinary care in using the right, they must do more than those who are not blind, in order to exercise ordinary care; and that, while the city must recognize the full right of the blind to travel in the streets, it, on the contrary, is held to do no more than it must for those who are not blind. Well-considered cases, speaking to the very point, clear up this confusion of thought. In *Kaiser v. Hahn*, 126 Iowa 561, 562, it appeared that plaintiff's eyes were weak from recent illness, and that she was wearing colored glasses to protect them from the glare of the sun, and we hold that this may be considered upon whether there was an excuse for failure to see an obstruction on the walk which would be perfectly plain and obvious to one with ordinarily clear vision.

*Smith v. Wildes* (Mass.), 10 N. E. 446, was an action of tort for injuries to the plaintiff, a blind person, who fell through a trapdoor in the sidewalk in front of the premises of defendants on a much frequented street. It appeared that defendant caused the trapdoor to be opened, and put up no guards to keep persons from walking into the hole, and had nobody there whose special duty it was to look out for and warn persons who might be approaching; and it was held that the question of defendants' negligence must be left to the jury.

In *Foy v. City of Winston* (N. C.), 35 S. E. 609, it became necessary to dig a ditch 18 inches deep and 15 inches wide from the curb line of the street across the sidewalk. When the workmen quit for the day, they left a plank or planks across part of the ditch, and hung up a red lantern, lighted, to warn pedestrians. Shortly afterwards, the plaintiff, who was blind, and who was regularly accustomed to walk along the street, came along, and fell into the ditch and was injured. One position taken in the request for instructions is that, the contractor having placed a plank or planks across part of the ditch, and having hung up a red lantern, lighted, to warn pedestrians, the defendant, as a

matter of law, even if responsible for the conduct of the contractor, was not negligent. It is held that this instruction was proper, but only so with a qualification given, that these precautions of the contractor should be considered by the jury, and that it was for them to say whether or not they were sufficient to enable a person of ordinary prudence, in the exercise of ordinary care, to have passed with reasonable safety.

### 2c.

The argument suggests itself that the city is not bound to take precautions specially adapted to protect the blind, because it is not bound to anticipate that they will pass upon its walks. As will presently be seen, some such position is dealt with in Webb's Pollock on Torts, Enlarged American Edition, pp. 564, 565. If the defendant was negligent, there was a failure of duty, which is or may be a tort. The term includes wrong suffered in consequence of the negligence or malfeasance of others, when the remedy at common law was an action on the case. *Holmes v. O. & C. R. Co.*, 5 Fed. 75, 77; *Mills v. United States*, 46 Fed. 738–748. And that which is also a breach of obligation may, by being negligent performance of a duty, base a measure of damages not allowed in mere breach of contract. *Cowan v. Western Union Tel. Co.*, 122 Iowa 379. In cases of tort, it becomes immaterial whether the wrongdoer could anticipate that which in fact resulted from his wrong. And it suffices that that which happened could and did result from the wrong. *Brown v. Chicago, M. & St. P. R. Co.* (Wis.), 41 Am. Rep. 41, 48, 49; *Galveston, H. & S. A. R. Co. v. Hennigan* (Tex.), 76 S. W. 452, 453; *Cincinnati, H. & I. R. Co. v. Eaton*, 94 Ind. 474, 478; *Texas & P. R. Co. v. Carlin*, 111 Fed. 777; *Doyle v. Chicago, St. P. & K. C. R. Co.*, 77 Iowa 607, 610. If we applied this rule here, it would preclude defendant from urging that it was under no obligation to anticipate that any blind man would pass over this walk at the point where the

7. MUNICIPAL COR-
PORATIONS: neg-
ligence: use of
streets by blind
persons: knowl-
edge of use: ef-
fect.

ditch came up to the south line of the walk. Under an application of that rule, it would be bound for the consequences if no blind man had ever before used a walk in the town. But it is manifest that we need not go so far, because this particular blind man was, at the time when injured, traveling the route he had taken for ten years to go between his home and the business portion of the town. There is and can be no pretense that the defendant was in ignorance of this. If, then, it had a duty to use precautions as to this excavation which would protect the blind as well as those who were not blind, it cannot avoid this responsibility, as matter of law, on the theory that the passage of this blind man was unforeseen, and not, in reason, to be anticipated. For these reasons, the holding of Webb's Pollock on Torts, supra, has no application. It is there said that, if a workman throws a heavy object from his roof in a country village where few passersby are, he is, at all events, free from criminal liability if he calls out to all people to have a care, even though some passerby be deaf; that the suffering of that person is his misfortune, which, though unaccompanied by any imprudence on his part, cannot be set down to the fault of the workman. But this is limited to where the workman had no particular reason to suppose the next passerby would be deaf, and it is of that case that it is said that he was bound only to such caution as suffices for those who have ears to hear. And there is the further statement that, on the other hand, it seems clear that greater care is required when it does appear that one is dealing with persons of less than ordinary faculty, and that, in such cases, it will not discharge liability to show merely that men with good hearing or sight would have come to no harm.

It is said uniformly that the blind and the halt have as much right to the use of the street as those who have possession of their faculties. It would seem that the recognition of this right would require not only that the blind should take their condition into consideration when traveling, but that

the city, in dealing with its passageways, should also take the rights of the blind pedestrian into consideration. The very cases that emphasize the additional care that the one under disability ought to exercise, emphasize at times that the blind have a right upon the public street as well as those who can see, and some of the cases say, in terms, that the duty to use more diligence in order to exercise due care is mutual.

We reach the conclusion that, while the city owed no one more than ordinary care, it was a question for the jury whether, in consideration of plaintiff's infirmity, it had exercised that degree of care; that it was for the jury whether defendant had failed in its duty to plaintiff.

III. A few days before the accident in suit, an excavation was made in the center of Main Street. While plaintiff knew of this, it appears that it was filled up before plaintiff was injured, and he advised of it. He had made no inquiries as to whether any excavating beginning on the south line of Main Street was being done, but says that, whenever there was excavating in the street, "there is generally something up. When I come to a crossing I go slow, and generally there is a box or board or something to warn a fellow, or someone standing there. There is always someone standing by watching them work that would tell me they were digging in the street. In that way I would learn about the digging."

At the time of his injury, no one was near the end of this ditch, and the nearest workman was about a block south of Main Street. As said, plaintiff had made no inquiries as to whether any excavating was being done beginning on the south line of Main Street, and did not know of this excavation. On the day before his injury, he went west on the south side of Main Street. It was his habit to tap with his cane in front and to the right. This, when he was going west, naturally took him farther north and away from the point where this ditch was later begun than would be the case when he was walking east, which he was doing when

injured. But he had gone east the evening before, and does not remember whether the street was torn up then. At the time of his injury, he was alone, and was feeling his way with his cane. He tapped with it in front and a little to his right, and kept it on the edge of the paving, and, according to defendant, "tapped along until he came to a place where there was nothing to put his cane on, and at the same time stepped into the ditch."

The position of appellee is well indicated by its motion to direct verdict, which urged, aside from the claim that defendant was not negligent, that plaintiff had failed to show that he was free from contributory negligence, because the evidence affirmatively shows that he knew that the excavation where the accident occurred was being made, and, though totally blind, made no inquiry as to the condition of the street, and because he voluntarily and without necessity went from the paving without knowing he could do safely, and fell into the ditch; and if he sustained any injury, it was caused by his deviating from the pavement especially made for foot passengers. It cannot be held, as matter of law, that plaintiff knew that this ditch was being excavated. So the dispute narrows to whether it can be said, as matter of law, that he was guilty of contributory negligence because he went upon this walk without ascertaining whether this excavation was being made and being left unguarded and without barricade.

8. NEGLIGENCE: contributory negligence: unbarricaded walks: failure to make inquiry as to condition.

The question of whether contributory negligence was for the jury has been considered to quite an extent in passing upon whether the city was, as matter of law, free from negligence. The trend of what has been said upon this is that the negligence of plaintiff was also for the jury. This may be added:

a. Where an unguarded ditch has made an opening in the walk, the city cannot urge that plaintiff was guilty of negligence, as matter of law, for going upon such walk; for

an unguarded, unbarricaded walk is an invitation to go upon it. *Cox v. City*, 111 Iowa 646, 647; *Barnes v. Town of Marcus*, 96 Iowa 675, 682.

b. Plaintiff had the right to assume defendant had kept the street in reasonably safe condition for travel. *Barnes v. Town of Marcus*, 96 Iowa 675, 681. He was not bound to

9. MUNICIPAL COR- anticipate that it would create some specific
PORATIONS: neg-
ligence: public  obstruction. *Kaiser v. Hahn*, 126 Iowa 561.
streets: condi-
tion: presump-  While the city may not be affected in whole
tion.
with the degree of care due from a carrier, it was under obligation to keep reasonably safe all premises so immediately adjacent to the street as that danger there might reach those who walked the street. And it has been held as to carriers that, where adjacent streets or premises must be used to cross a street car track, or to approach to or go away from that track, the carrier is bound to know whether these adjacent premises are in a safe condition for such use. *Conroy v. Twenty-third St. R. Co.*, 52 How. Prac. (N. Y.) 49; *Fillingham v. St. Louis Trans. Co.* (Mo.), 77 S. W. 314; *Haselton v. Portsmouth, K. & Y. St. R. Co.* (N. H.), 53 Atl. 1016; *Fash v. Third Ave. R. Co.*, 1 Daly (N. Y.) 148. And that it is the duty of the carrier to warn the passenger who gets off close to a ditch covered by water so as not to be noticeable, of the existence of the ditch, if it is known to the carrier, though it be not its duty to fence the ditch. *MacDonald v. St. Louis Transit Co.* (Mo.), 83 S. W. 1001. And where a passenger is injured getting off, by reason of an excavation at the car stop, he being ignorant and the carrier knowing of it, the latter is liable; though this is not on the theory of being responsible for the dangerous excavation, but for failure to give a warning. *Ft. Wayne Traction Co. v. Morvilius* (Ind.), 68 N. E. 304.

10. MUNICIPAL COR-     c. It is not, as matter of law, negligence
PORATIONS:
negligence: use  for a blind person to walk unattended on a
of streets: un-
attended blind  public street. *Smith v. Wildes* (Mass.), 10
person.
N. E. 446; *Neff v. Town* (Mass.), 20 N. E. 111.

d. Where a blind man fell into an open ditch in a street, it was not error to refuse an instruction that it was negligence for the blind man to use the streets without an attendant, or unless he constantly felt his way with his staff. *Foy v. City of Winston* (N. C.), 35 S. E. 609. We are satisfied by our own decisions that plaintiff was not, as a matter of law, guilty of contributory negligence. It is conceded, as it must be, that plaintiff, though blind, had the right to use the streets. He was required in so doing to use no more than ordinary care. While the authorities hold that ordinary care on the part of a blind traveler requires more of him than is required of one in possession of all his senses, this but goes to degree. Usually, it is no more the function of the court, rather than that of the jury, to determine whether what is ordinary care on the part of a blind man has been exercised, than is the deciding whether a passenger who needs to do less to be ordinarily careful, has been ordinarily careful. The application of authority to fact questions is always met by the difficulty that the facts in two cases are never alike. But we are persuaded plaintiff was at least as much in the exercise of ordinary care as the one in *Yeager v. Spirit Lake,* 115 Iowa 593, and *Hill v. City of Glenwood,* 124 Iowa 479, wherein we hold contributory negligence to be for the jury. We are not prepared to hold, as matter of law, that a blind man, who rests on ten years' experience that there were people at hand to warn him of excavations, and that there was usually a bar or obstruction to apprise him of it, and ten years' safe travel on the route where hurt, is guilty of contributory negligence because he fails to inquire, at all times during all these years, whether there are new excavations on or dangerously near to the path which is his usual route between home and business, and in going over which he uses the precaution of tapping with a cane in front of him.

It was error to take the negligence of either party from

*11. MUNICIPAL COR-PORATIONS: negligence: use of street by the blind: negligence per se.*

the jury.   Wherefore, the judgment below must be reversed.
—*Reversed* and *Remanded.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.