## Kennedy v. Cohn, etc.

*Robert M. Bernstein* and *Isadore H. Bellis*, for plaintiff.

*Ward C. Henry* of *Swartz, Campbell & Henry*, for defendant.

CRUMLISH, J., January 17, 1950. — Plaintiff recovered a $3,000 verdict in this trespass action. Defendant's motions for a new trial and judgment n. o. v. were denied.

Defendant assigns as reasons for a new trial the following: (1) The verdict was against the evidence; (2) the verdict was against the weight of the evidence; (3) the verdict was contrary to law; (4) the verdict was contrary to the charge of the court; (5) the verdict was excessive.

In support of the motion for judgment n. o. v., defendant contends that plaintiff was guilty of contributory negligence as a matter of law.

On December 2, 1947, about 11 o'clock a.m., plaintiff, a blind man, following the route he was accustomed to take, when within a short distance of his place of employment, fell into an open cellar door on defendant's property.

Plaintiff's own testimony at the trial was as follows: He has been blind since the age of two, is a graduate in osteopathy, and has been working since 1943 as a masseur for his present employer whose business establishment is located at 1405 Locust Street, Philadelphia, Pa. He is familiar with the neighborhood of defendant's premises, which are a short distance from his own place of employment. On the morning of the accident plaintiff was accompanied by another man to within a few steps of the cellar door in front of defendant's garage at 1411 Locust Street. (The cellar door, the only method of entering defendant's basement, is constructed of two flat pieces of metal which open up. The door extends four feet eight inches from the wall of defendant's building into the sidewalk. The space between the end of the door and the curb is about 10 feet.) Plaintiff could tell from the jostling that the sidewalk was more crowded than usual, and, since he was familiar with the street, he knew that

there were cellar doors extending out into the sidewalk. He tapped ahead with the white cane he carried in his left hand and felt the metal of the cellar door, recognizable to him by the distinctive sound of his cane on metal. His cane tapping told him the cellar door was down. He proceeded with his right foot. The far, east, side of the cellar door being open, however, plaintiff, upon going forward on the next step with his left foot, fell into the space through to the basement of defendant's garage.

Defendant assisted plaintiff immediately after the landing and shortly thereafter took him to his place of employment where he remained until 3 p.m. Three days after the accident, on December 5, 1947, plaintiff consulted an osteopathic physician to whom he paid 17 office visits for treatment. March 8, 1948, plaintiff discontinued professional treatment and on March 12, 1948, he went to Canada to visit his sisters. During all the time from the date of the accident, he had been treating himself by heat applications and rest, and he continues to do so. He did not feel able to return to work until September 7, 1948, when he began a lighter schedule (12 fewer hours a week) at a lower salary ($5 a week less). Although the laceration and bruises resulting from the fall have disappeared, plaintiff still suffers from pain in the sacroiliac region and at intervals must yield to the pain and rest.

Plaintiff's medical testimony was that during his 17 treatments the patient was given adjustments to the right hip, the osteopathic treatment for a sprain on the right side of the iliac. An examination one week before the trial revealed a 25 percent limitation in bending to the right and a limitation in the movement of the right leg and thigh. The physician's conclusion was that plaintiff was and is suffering from a traumatic fibromyitis, which, if chronic, will continue

to trouble plaintiff. Defendant's physician witness testified to negative findings when he examined plaintiff on February 4, 1948. His conclusion was that there was present, at the time of the examination, "some slight tension and rigidity in the small of the back".

At the end of the testimony on behalf of plaintiff, defendant, his motion for a nonsuit refused, testified that he was "pretty sure" that it was he himself who opened the one side of the cellar door on the day of the accident. His testimony was that he placed, in lieu of the bar, broken at the time, he ordinarily used as a protective measure, a box 18 inches square and 2½ feet high, on an angle between the open door and the sidewalk. Down in the cellar to repair a fuse, defendant was on hand when plaintiff fell through the door.

The jury found for plaintiff in the amount of $3,000.

*Motion for New Trial—Reasons 1 to 4, Inclusive*

On the subject of defendant's negligence, the testimony of plaintiff and defendant was in flat contradiction, one of the other. The inference from plaintiff's testimony is that defendant made no attempt to guard, by any device, the opened side of the door. Defendant testified that he made an effort to warn oncomers and prevent mishap by the use of the box described above.

If defendant was not negligent as to the ordinary man with normal senses, then he was not negligent as to plaintiff, merely because he was blind. In Bilotta v. Media, Middleton, Aston & Chester Electric Railway Co., 220 Pa. 542 (1908), plaintiff, an Italian, did not understand the warning of defendant's agent, spoken in English, given to passengers alighting from its car under dangerous conditions. As a result of his failure to understand the warning, plaintiff was injured. The court said, at page 546:

"If the warning was such as would indicate danger ahead to anyone of ordinary intelligence, a disregard of it would unquestionably convict the party disregarding it of contributory negligence . . . but without anything more to indicate peculiarity in the plaintiff, distinguishing him from the ordinary traveler, defendant's servants had a right to presume that what would be notice to the ordinary traveler would be notice to him. His inability to understand English required greater caution on his part in advancing, but added nothing to the duty of the defendant. . . . Where the inability of the party injured, owing to some individual peculiarity of his, unknown to the defendant, to understand what to the ordinary person would be a sufficient warning, is the immediate and approximate cause of his injury, the accident is to be referred to the party's misfortune, and not to the negligence of the defendant, simply because of failure to give effectual warning." See also: Anschel v. Pennsylvania Railroad Co., 346 Pa. 123 (1943), at page 126 where the holding is: "The fact that the deceased's eye-sight was impaired did not increase defendant's duty toward him in this case, nor excuse him from his own negligence."

Defendant's negligence here, however, depends upon whether under the circumstances he should have anticipated that since the west door was closed, someone might be injured because of the absence of the usual barrier, the upright door on the west side. Defendant's duty to plaintiff arises out of the fact that he reasonably could foresee that a pedestrian might be injured by the negligent use of the cellar opening on the sidewalk. If defendant could foresee that the wrongful opening of the door might harm pedestrians, then plaintiff, whose injury was directly attributable to the fact that only one door was open, as a pedestrian belongs to the class to whom defendant was duty bound to exercise care. In Hydraulic Works Co. v. Orr et ux.,

83 Pa. 332 (1877), a case involving the question of whether or not it was negligent for defendant to maintain a certain platform which fell on and injured plaintiffs, Chief Justice Agnew said, at page 335:

". . . it has been often said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to *accident*, the rule will vary. The question then becomes one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence."

In McHugh v. Kerr, 208 Pa. 225 (1904), plaintiff was injured by falling into a cellarway which was protected by a stone sloping from a height of seven inches at the building to the level of the pavement at the entrance. At page 226, it was said:

"The negligence of the defendant in not properly guarding the south side of the cellarway was so clearly for the jury that it is not necessary for us to discuss the question. If the court below had held that the stone —less than a foot high at the building, tapering down to a point level with the pavement—was a sufficient protection, and that, by having it there, the defendant had exercised due care under the circumstances, there would have been a judicial assertion of a fact which few juries would be likely to find."

Compare with these: King v. Thompson and Wife, 87 Pa. 365 (1878) and S. Townsend Stackhouse v. Charles H. Vendig & Co., 166 Pa. 582 (1895).

In Jacob v. Philadelphia, 333 Pa. 584 (1939), Justice Barnes, citing A. L. I. Restatement of the Law of Torts §§284, 289, 290 and 291, said, at page 586: "It is well settled that conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented." In that case plaintiff was injured when, slipping on ice, he pulled defendants' open

cellar doors down on his face. At page 587, Justice Barnes, affirming the order refusing to take off a nonsuit said:

"*While the failure to keep the doors closed might possibly have created a risk of harm to pedestrians walking along the sidewalk* (italics supplied), it could not reasonably have been anticipated by defendants that this condition would result in an injury to plaintiff. The line of travel as he descended to the sidewalk would not take him past the cellar doors; his violent contact with them came only as a result of his reaching for something to break his fall. No exercise of prudent foresight on defendants' part would cause them to guard against this extraordinary occurrence, . . . the conclusion must follow that plaintiff's injury was not the result of any breach of duty by these defendants, but was attributable solely to his own involuntary act in slipping upon the icy steps and sidewalk: (citing cases)."

In the instant case, plaintiff's testimony as to his own conduct was uncontradicted. Plaintiff was familiar with the neighborhood where the accident occurred and had traveled it almost daily for three years before the accident. He compensated for his defective vision by using a cane. Before stepping on the cellar door, plaintiff tapped ahead and felt that it was down. After one step forward on his right foot, he proceeded with his left. This step took him past the middle of the door, and, since the east side was open, he fell through.

Instructions, to which no exception was taken, as to defendant's duty under the circumstances were given, and the question involved was resolved by the jury against defendant, as is indicated by its verdict.

### Motion for New Trial—Reason 5

If, as apparently is a fact, the jury believed the testimony for plaintiff concerning the nature and degree of

his injury, the amount of the verdict was not excessive as compensation for future pain and inconvenience as well as for any required future medical treatment and the loss of time from work caused by periodic incapacity. The testimony of plaintiff points to a chronic sacroiliac ailment resulting from the fall, and, although the future losses resulting therefrom cannot be measured with strict accuracy, it was for the jury to set a figure to compensate him. In Amos v. Delaware River Ferry Company, 228 Pa. 362, 369 (1910), is the following holding on the measure of damages:

"It was shown by medical testimony that not only was her disability likely to be permanent, but that no limit in time, other than her life, could be put with certainty to the pain and suffering which she would endure in consequence. For mitigation of this pain it was shown that electrical and other treatment would be required. It was objected that because it was not shown with greater degree of certainty how long such treatment would be required, it was not to be considered in estimating plaintiff's damages. In this, as in all elements of damage which have regard to the future, it is a question of likelihood as to continuance; but that is always for the jury. A sufficient basis was here afforded by the evidence for an intelligent judgment, and that was all that was required."

See, also, McGinley v. Phila. & Reading Co., 257 Pa. 519, 521 (1917) and Yost v. West Penn Railways Co., 336 Pa. 407, 410 (1939).

### Motion for Judgment N. O. V.

Defendant argues that, as a matter of law, a matured person with perfect vision would be contributorily negligent were he to walk into an open hole in the street and that plaintiff was similarly contributorily negligent because he had not compensated himself for his blindness by providing himself with an aid

to his senses which would have enabled him to have apprehended the danger and to have avoided the accident. With this contention we cannot agree. Even had the plaintiff been a man with perfect vision, the question of his contributory negligence, under some circumstances, would have been one for the jury. The peculiar circumstances here, particularly the fact that plaintiff *had* compensated himself for his defective vision with a known and approved device, leave no doubt that there is "room for fair and sensible men to differ in their conclusions from the available data".

Generally speaking, it was the duty of plaintiff to act as a reasonably prudent person would under the circumstances in order to avoid harm to himself. The degree of care which one having defective senses must use in order to meet the standard set for the ordinarily prudent man was indirectly set forth in The Central R. R. Co. of New Jersey v. Feller et al., 84 Pa. 226, 229 (1877) as follows: "He was somewhat deaf. . . . But he himself being aware of his own defect, had a greater reason for caution in advancing." Again, in Flynn v. Pittsburgh Railways Company, 234 Pa. 335, 338 (1912): "If she was nearsighted, there was the greater reason for caution on her part in crossing the street. Her nearsightedness, instead of relieving her from the duty of ordinary care, imposed upon her the duty of greater precaution to avoid injury. . . ." Denying, because of contributory negligence, recovery to a blind plaintiff who fell into a trench, the court said in Smith v. Sneller et al., 345 Pa. 68, 72 (1942):

"While it is not negligence per se for a blind person to go unattended upon the sidewalk of a city, he does so at great risk and must always have in mind his own unfortunate disadvantage and do what a reasonably prudent person in his situation would do to ward off danger and prevent an accident. The fact that plaintiff

did not anticipate the existence of the ditch across the sidewalk, in itself, does not charge him with negligence. . . . Plaintiff's vision was so defective that he could not see a dangerous condition immediately in front of him. In such circumstances he was bound to take precautions which one not so afflicted need not take. In the exercise of due care for his own safety it was his duty to use one of the common, well-known compensatory devices for the blind, such as a cane, a 'seeing eye' dog, or a companion. These are a poor substitute for sight, but any one of them would probably have been sufficient to prevent this accident." See, also, Robb v. Quaker City Cab Co., 283 Pa. 454 (1925) and McCann v. Sadowski, 287 Pa. 294 (1926).

Other jurisdictions are in accord with Pennsylvania's standard, that of the reasonably prudent man under the circumstances, and the thought has been variously stated. Chief Justice Hunt, rejecting appellant's contention in Davenport v. Ruckman, 37 N. Y. 568 (1868), that the nearly blind plaintiff should have been nonsuited on the ground that she herself was guilty of negligence in walking the streets unattended, approved as a fair statement of the precise question for the jury the following portion of the trial judge's charge: "Whether it was so improper and imprudent for Miss Davenport to have gone into the street unattended, in her then condition of sight, that it would be negligence upon her part to do so, sufficient to prevent her from recovering compensation for an injury she might sustain from the negligence of others, while traveling or passing along the streets." Chief Justice Hunt continued: "The streets and sidewalks are for the benefit of all conditions of people, and all have the right, in using them, to assume that they are in good condition, and to regulate their conduct upon that assumption. . . . Each is, however, bound to know that prudence and care are in turn required of him, and, that, if

he fails in this respect, any injury he may suffer is without redress. . . . Whether a hole in the ground could be distinguished by her and avoided, was for the jury to say; and whether her power of sight was sufficient to justify her in walking the streets alone, was eminently a question for them."

In Sleeper v. Sandown, 52 N. H. 244 (1872), the question of plaintiff's contributory negligence went to the jury with the court's instruction "that although this was in the daytime, and the plaintiff would have seen the defect and avoided it if he had been possessed of his eyesight, it would not follow, as matter of law, that he must be regarded as not in the exercise of ordinary care and prudence because he attempted to pass alone when he was totally blind, but that it was a question of fact for the jury whether he was in the exercise of ordinary care and prudence in passing under such circumstances; that the burden of proving such care was on the plaintiff; that, if he was totally blind, more care would naturally be expected when travelling alone, though the standard, after all, would be ordinary care. . . ." The court continued, at page 252, ". . . if, in the present case, the plaintiff knew or ought to have known that it was dangerous for him to attempt to cross this bridge alone, as he did, his attempt to do so would, beyond all question, be want of due care, and he could not recover for the injury that ensued. But he had a right to assume that the bridge was reasonably safe and free from defect—that is, that the legal duty of the town with respect to its condition had been performed,—and to act upon that assumption."

In Smith v. Wildes and another, 143 Mass. 556, 10 N. E. 446 (1887), the court sent the question of blind plaintiff's negligence to the jury, saying: "He was forty-nine years old, apparently intelligent, used to going about alone, well acquainted with this par-

ticular locality, and he had a right to rely to some extent upon the supposition that pitfalls would not be left unguarded in the sidewalk."

Plaintiff in Chesapeake & Potomac Telephone Company of Baltimore City v. Lysher, 107 Md. 237, 68 Atl. 619 (1908), testified:

". . . that he had been going over the same ground for four years. That he moved along the street by passing his cane over the street in front of him, feeling along with his cane, following the curbstone as much as he could . . . that . . . on January 20, 1906, . . . He fell in the hole as he was walking on the pavement with his stick in his right hand, in the same way he always used it. He was running it along the edge of the curb as he always did and he stepped into the hole. There was nothing around the hole to warn him there was an obstruction. . . . There was further testimony to the effect that the hole in which the plaintiff fell had been dug by the agents of the defendant corporation along the footway or pavement of the street for the purpose of planting a telephone pole and the hole was open and unprotected at the time of the accident. . . ."

On appeal, the Maryland court had this to say to the contention that the issue of plaintiff's contributory negligence should be withheld from the jury:

". . . it would have been a manifest invasion of the province of the jury in determining the question of negligence on the part of the defendant and of contributory negligence on the part of the plaintiff. These were both questions for the consideration of the jury. . . . The vital question in the case was whether the plaintiff, a blind man, exercised due care in passing along the sidewalk on the west side of Bradford street on the day of the accident."

In Charles O. Balcom v. City of Independence, 178 Iowa 685, 160 N. W. 305 (1916), the Iowa court said:

"We are not prepared to hold, as matter of law, that a blind man who rests on ten years' experience that there were people at hand to warn him of excavations, and that there was usually a bar or obstruction to apprise him of it, and ten years' safe travel on the route where hurt, is guilty of contributory negligence because he fails to inquire, at all times during all these years, whether there are new excavations on or dangerously near to the path which is his usual route between home and business, and in going over which he uses the precaution of tapping with a cane in front of him."

See also, Hill v. Glenwood, 124 Iowa 479, 100 N. W. 522 (1904).

The following charge was approved by the appellate court of Washington in Masterson v. Lennon, 115 Wash. 305, 197 Pac. 38 (1921):

"Any person, even the blind or partially so, is entitled to use the streets and the sidewalks thereon for travel in a lawful way, using ordinary care, under the circumstances, to avoid injury to himself, and the mere fact of his total or partial blindness does not debar him from recovery for the negligence of another which is the proximate cause of his injuries, if he himself is exercising ordinary care. The fact that a person is wholly or partially blind does not excuse him from the obligation to exercise reasonable care for his own safety. Such a person is bound to exercise that degree of care that an ordinarily careful and prudent person would have exercised under the circumstances and in a similar condition, and would require such use of his other senses, as a reasonably careful and prudent person in his condition would have used."

The Connecticut court in Muse v. Page, 125 Conn. 219, 4 A. (2d) 329 (1939), speaking of the partially blind 65-year-old plaintiff's contributory negligence said:

"While the standard of care to be used is an external standard, taking no account of the personal equation of the man concerned, yet the amount of care required depends upon the circumstances of the particular case, and if a person suffers from a physical disability increasing the risk of harm to him, that is among the circumstances to be considered. Thus reasonable care in the case of one with such defective vision as the plaintiff had, is such care as an ordinarily prudent person with a like infirmity would exercise under the same or similar circumstances." See, also, Keith v. Worcester & Blackstone Valley Street Railway Company, 196 Mass. 478, 82 N. E. 680; 14 LRA (NS) 648 (1907).

Plaintiff in the present case was bound to use the care of an ordinarily prudent man under the same circumstances. Well educated, he has been blind for most of his 49 years. The route he was travelling at the time of the accident was the one he regularly used to go to his work. At the time of the accident his testimony was that he used his cane in the manner he had always used it. Perhaps had plaintiff been able to see, he would not have fallen, but it was for the jury to determine whether plaintiff at the time of the accident had "in mind his own unfortunate disadvantage and (did) what a reasonably prudent person in his situation would do to ward off danger and prevent an accident". Here reasonable minds could differ on whether or not plaintiff's behavior, measured by the standards set forth, was free from negligence which contributed to his injury, and it is "only in those cases where contributory negligence is so clearly revealed that fair and reasonable individuals would not disagree as to its existence that it may be declared judicially": Malitovsky v. Harshaw Chemical Co. et al., 360 Pa. 279, 283 (1948).

558

Accordingly, the motions for new trial and judgment n. o. v. were dismissed.