TROY AND GREENFIELD RAILROAD COMPANY *vs.* COMMON-
WEALTH.

Suffolk.   March 25. — June 24, 1879.   AMES & LORD, JJ., absent.

The Commonwealth cannot be impleaded in its own courts except by its own con-
sent clearly manifested by act of the Legislature.

The Troy and Greenfield Railroad Company mortgaged its entire railroad, fran-
chises and property to the Commonwealth, under the Sts. of 1854, *c.* 226, and
1860, *c.* 202, to secure the payment of a loan made by the Commonwealth; and
subsequently surrendered the same to the Commonwealth, under the St. of
1862, *c.* 156, § 2, which provided that "the right of redemption" should not be
barred until a certain time after the completion of the road by the Common-
wealth. *Held,* that the court had no jurisdiction, either under the Gen. Sts. *c.* 63,
§ 128, *c.* 113, § 2, or *c.* 140, §§ 13–35, of a bill in equity, brought by the railroad
corporation against the Commonwealth, to enforce this right of redemption.

BILL IN EQUITY, filed January 20, 1879, the allegations of
which, so far as it is now necessary to state them, were as fol-
lows:

On May 10, 1848, the plaintiff was incorporated by the St. of
1848, *c.* 307, and authorized to construct a railroad from the town
of Greenfield in this Commonwealth to connect with a railroad
to be constructed from the city of Troy in the state of New
York.

On July 28, 1855, under the St. of 1854, *c.* 226, an act author-
izing the Commonwealth to lend its credit, to the amount of
$2,000,000, to enable the plaintiff to construct a tunnel and rail-
road through the Hoosac Mountain, and requiring the plaintiff
to mortgage its franchise and property, the plaintiff mortgaged
to the Commonwealth "the entire railroad of said corporation,
with its franchises, income and property," to secure the payment
of said loan.

By the St. of 1860, *c.* 202, the terms of the loan were modified,
and the plaintiff was required to execute a further bond and
mortgage, and to purchase "the entire road, franchise, stock,
bonds and other property" of the Southern Vermont Railroad
Company, and transfer the same to the Commonwealth as secu-
rity for a loan then made and as additional security for the pay-
ment of the loan already made. In pursuance of this statute the
plaintiff, in April 1860, purchased the last-named property and
mortgaged the same to the Commonwealth; and, on July 6, 1860,

also made a mortgage to it of "its own entire railroad," "and all its franchises and property whatever." On April 5, 1862, a further mortgage was made to the Commonwealth of "all the franchises and property whatsoever, real, personal and mixed, of said Troy and Greenfield Railroad Company." All of these mortgages were as additional security for the payment of the above-mentioned loans.

On September 4, 1862, under the St. of 1862, c. 156, an act authorizing the plaintiff to surrender to the Commonwealth the property mortgaged, and providing for the completion of the road and tunnel by the Commonwealth, and that "the right of redemption" should not be barred until ten years had elapsed after the road and tunnel should be completed and open for use, the plaintiff surrendered to the Commonwealth, under the several mortgages, all its property, real, personal and mixed. This surrender was made, not by reason of any default on the part of the plaintiff, but because the Commonwealth was specially interested in completing the road and tunnel, and requested the surrender to be made. At the time of the surrender, the Commonwealth had only advanced on account of the road and tunnel the sum of $725,338; and, after the surrender, the Commonwealth remained in exclusive possession of the property and managed the same as it saw fit, and completed the road and tunnel, and opened them for use about June 30, 1876.

On December 21, 1878, a demand was made on the treasurer of the Commonwealth for an account of the expenditures made in behalf of the road and tunnel, and an offer made to redeem on payment of such sum as was equitably due.

The prayer of the bill was for an account; that the plaintiff should be allowed to redeem on payment of such sum as should be found to be due; and for further relief.

The Commonwealth appeared specially, and demurred to the bill, assigning the following, among other grounds of demurrer: "The defendant is a sovereign state, and cannot be impleaded in said cause, or be bound by any order or decree that may issue from this honorable court therein."

The case was heard by *Endicott*, J., on the bill and demurrer, and reserved for the determination of the full court. If the demurrer was sustained, the bill was to be dismissed.

*G. Marston*, Attorney General, for the Commonwealth.

*E. R. Hoar, & S. Dickson* of Pennsylvania, (*D. W. Gooch* with them,) for the plaintiff. At common law in England, a petition of right will lie even for a breach of contract by the sovereign, resulting in unliquidated damages. *Thomas* v. *The Queen*, L. R. 10 Q. B. 31. See *Chisholm* v. *Georgia*, 2 Dall. 419, 437 *& seq.* And where a sovereign assumes the character of a trader, the privilege of sovereignty is waived. *The Charkieh*, L. R. 4 Ad. & Ec. 59. See also *Curran* v. *Arkansas*, 15 How. 304.

The St. of 1862, *c.* 156, § 2, under which the plaintiff surrendered its property to the Commonwealth, expressly provides that "the right of redemption shall not be barred" for a certain time. What remained in the plaintiff after the surrender was therefore clearly recognized as a right, and not as a matter of grace; and the fact that no form of remedy was specifically pointed out is a strong indication that the Legislature intended that the plaintiff should have the remedy already provided in similar cases. Construing the statutes then and now in force in connection with the St. of 1862, *c.* 156, there is no difficulty in finding the remedy.

As early as 1804, the right was given to any mortgagor, who had mortgaged "any real estate" to the Commonwealth, to file a bill in equity in this court to redeem the same. St. 1804, *c.* 103. In the subsequent reënactments of this statute, the words "real estate" are omitted. Rev. Sts. *c.* 107, §§ 35–39. Gen. Sts. *c.* 140, §§ 45–48. In 1804 railroad mortgages were unknown, but in 1860 they were very common, and it may well be that the change in phraseology was intentionally made broad enough to include them. However this may be, the greater part of the property in question is real estate, and so comes within the most restricted construction of the act. And the Gen. Sts. *c.* 63, § 128, specifically give this court jurisdiction in equity "of all questions arising out of railroad mortgages." This language is broad enough to include mortgages to the Commonwealth, and that such was the intention of the Legislature is shown by the three following sections, which provide for the form of a railroad mortgage to the Commonwealth, what property it shall include, and where it shall be recorded.

GRAY, C. J.   It is a fundamental principle of our jurispru-
dence, that the Commonwealth cannot be impleaded in its own
courts, except by its own consent clearly manifested by act of
the Legislature; and this principle is applicable to actions to
recover real estate, and to bills in equity to enforce trusts, or to
foreclose or redeem mortgages.   The distinction suggested in the
case of *The Charkieh,* L. R. 4 Ad. & Ec. 59, cited in the able
and learned argument for the plaintiff, as to a foreign sovereign
assuming the character of a trader, cannot be entertained by the
courts of the government against which the suit is brought.
*United States* v. *Clarke,* 8 Pet. 436.   *Curran* v. *Arkansas,* 15
How. 304, 309.   *The Davis,* 10 Wall. 15.   *Carr* v. *United States,*
98 U. S. 433.   *Sewall* v. *Lee,* 9 Mass. 363, 370.   *Commonwealth*
v. *André's Heirs,* 3 Pick. 224, 225.   *Pingree* v. *Coffin,* 12 Gray,
288, 321.   *Briggs* v. *Light Boats,* 11 Allen, 157, 170–176, and
cases there cited.

The object of the present bill is to redeem the entire rail-
road, franchise and property of the Troy and Greenfield Railroad
Company, mortgaged by that corporation to the Commonwealth
under the Sts. of 1854, *c.* 226, and 1860, *c.* 202, and surrendered
to the Commonwealth under the St. of 1862, *c.* 156, which pro-
vides that " the right of redemption shall not be barred until
ten years have elapsed after said road and tunnel are completed
and the same open for use."   Neither of these statutes contains
any provision as to the manner of asserting this right of redemp-
tion.

The only provisions of statute, that can be supposed to have
any application to the case, are contained in those chapters of
the General Statutes which relate to the equity jurisdiction of
this court, to the foreclosure and redemption of mortgages, and
to railroad corporations.

The statute defining the equity jurisdiction of this court enu-
merates, among other subjects within its cognizance, "suits for
the redemption of mortgages, or to foreclose the same."   Gen.
Sts. *c.* 113, § 2.   Even if this clause could be construed to include
mortgages of railroads, yet to hold that such a general provision,
in which the Commonwealth is not named, gives this court juris-
diction to entertain suits against the Commonwealth, would be
inconsistent with settled rules of construction of statutes, and

would oblige the court to hold that the other clauses in the same section, conferring, in like general terms, jurisdiction in equity of suits for enforcing and regulating the execution of trusts, or for specific performance, or in matters of account, or cases of accident or mistake, or under any other head of chancery jurisdiction, likewise include suits against the Commonwealth.

Chapter 140 of the General Statutes, entitled " Of the foreclosure and redemption of mortgages," relates only to mortgages of real estate.  The provisions as to mortgages of personal property are contained in *c.* 151, §§ 1–8, and those as to railroad mortgages in *c.* 63, §§ 123–131.

Chapter 140 begins by providing that " after the breach of condition of a mortgage of real estate," the mortgagee may recover possession of " the mortgaged premises " by entry or by action. § 1.   It provides that a certificate of such entry shall be recorded in the registry of deeds of the county " where the land lies ; " § 2 ; that such action may be brought by the mortgagee, declaring " on his own seisin," " like a writ of entry," " against whoever is tenant of the freehold ; " §§ 3, 8 ; or may be brought and conducted in like manner by an assignee of the mortgage ; § 7 ; and that the plaintiff, if he prevails, shall either have judgment " for possession as at common law ; " or a conditional judgment that if the defendant, within two months, pay the sum adjudged to be due on the mortgage, with interest and costs, he shall hold the premises discharged of the mortgage ; otherwise, the plaintiff shall have his execution for possession and for costs.  §§ 4, 5.  All these provisions for foreclosure manifestly apply only to mortgages of real estate.  So do the sections as to the redemption of mortgages, (§§ 13–35,) as most clearly appears by the provisions requiring the mortgagee to render an account of rents and profits, and of sums paid for taxes, repairs and improvements ; §§ 15, 21 ; and the suit for redemption to be brought in the county " where the land lies ; " § 23 ; as well as the sections as to mortgages with power of sale, (§§ 38–44,) which speak of " the equity of redemption of the land demanded," and of rights of dower.  §§ 41, 44.

The succeeding sections of the same chapter relate to mortgages to the Commonwealth.  By § 45, " when a mortgage is made or assigned to the Commonwealth, the treasurer may demand and receive the money due, and upon payment shall make

and acknowledge a discharge of the mortgage." By § 46, " if the condition of such mortgage is not duly performed," possession may be obtained by the treasurer, by entry for the breach of condition, or by "action in the name of the Commonwealth to recover possession of the mortgaged premises; and such possession, obtained either by entry or by action, shall have the same effect in foreclosing the right of redemption as a similar possession by any other mortgagee." By § 47, "the mortgagor or his assigns may redeem such premises in like manner and upon the same terms as if they were held by any other mortgagee; and the payment or performance of the condition for that purpose shall be made or tendered to the treasurer." By § 48, "if the treasurer and the person applying to redeem the mortgage disagree as to the sum due," a suit in equity for redemption may be brought against the Commonwealth in this court for the county of Suffolk; the treasurer is to be summoned, and appear and answer in behalf of the Commonwealth; "and like proceedings shall be had, and judgment rendered, as are provided in the case of other mortgages; except that the treasurer shall accept any payment due to the Commonwealth, and upon the receipt thereof, or upon the performance of such other act as the court orders, shall discharge the mortgage in like manner as when the debt is paid without suit."

By a familiar rule of construction, these sections are to be construed in connection with the rest of the chapter of which they form part, and with earlier statutes upon the same subject. *Eaton* v. *Green*, 22 Pick. 526, 531. *Holbrook* v. *Bliss*, 9 Allen, 69, 75. The words "a mortgage," "such mortgage," "the mortgage," and the provisions for payment and receipt of the money due, for obtaining possession by entry or by action, and for foreclosure and redemption as in case of "any other mortgagee," clearly have in contemplation mortgages of real estate such as have been spoken of throughout the chapter, and not mortgages of the entire franchise and property of a railroad corporation. The St. of 1804, c. 103, which these sections and the corresponding provisions of the Rev. Sts. c. 107, §§ 35–38, substantially reënact, spoke only of "real estate" mortgaged to the Commonwealth; and we can have no doubt that those words were omitted, in the reënactment of the St. of 1804 in the revisions of 1836

and 1860, simply because, taking into consideration the other provisions already incorporated in the same chapter, they were necessarily implied, and it would have been superfluous to repeat them.

Chapter 63 of the General Statutes, relating to railroad corporations, after providing in § 124 that, in case of default in the performance of the condition of a mortgage executed by a railroad corporation of its property, rights and privileges, or any part thereof, to trustees for the benefit of its general creditors, or of any particular class of creditors, the trustees may permit the corporation to take and retain the possession and use of the mortgaged premises upon certain terms; and making provision in §§ 125–127 as to the reports and returns of trustees in possession of a railroad under a mortgage, the meetings of bondholders or creditors whose claims are secured thereby, the election of trustees, and the confirmation of such election by this court or a justice thereof; provides in § 128 as follows: "The Supreme Judicial Court and each of the justices thereof shall have full equity jurisdiction, according to the usage and practice of courts of equity, of all cases arising under the three preceding sections, and of all questions arising out of railroad mortgages, and may in a summary manner remove any trustee under a railroad mortgage, whether such trustee is in possession of the railroad or not, and appoint a new trustee in his stead, whether such trustee is elected by the bondholders or creditors as provided in said sections, or not."

These four sections, which are a reënactment of the St. of 1857, *c.* 178, do not mention, and evidently have not in view, mortgages to the Commonwealth, but mortgages such as are ordinarily executed by railroad corporations, when authorized by statute, to trustees for the benefit of bondholders or other creditors. The subsequent sections (§§ 129–131) which reënact the Sts. of 1838, *c.* 99, §§ 4, 5, and 1843, *c.* 10, and regulate the form, effect and record of mortgages by railroad corporations to the Commonwealth, significantly omit to confer jurisdiction on this or any other court over such mortgages.

Sections 124–130 of the Gen. Sts. *c.* 63, are left in force and unaltered by the general railroad act of 1874. St. 1874, *c.* 372, § 182. And the recent statute to provide a remedy for persons

having claims against the Commonwealth does not affect this case. St. 1879, c. 255, § 6.

The real estate in this Commonwealth, included in the mortgages executed by the plaintiff corporation, is so connected with its franchise and other property, that redemption cannot be had of the one without the others.

The result is, that the court has no jurisdiction to entertain this suit, and therefore the demurrer must be sustained, and the

*Bill dismissed.*