MARY A. MURPHY, administratrix, *vs.* INHABITANTS OF NEEDHAM.

Norfolk.    March 13, 14, 1900. — June 21, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Liability of Town to Employee injured in Public Work under Public Officer — Evidence.*

It is a defence to an action against a town, under the employers' liability act, St. 1887, c. 270, for the conscious suffering and death of the plaintiff's intestate, that the work in which the intestate was engaged was a public one under the direction of the superintendent of streets, who was a public officer engaged in the performance of a public duty; and the circumstances of this case do not justify

the plaintiff's contention that the superintendent was engaged as a servant of the town in matters relating to its private benefit and not to its public duty.

If, in an action against a town for personal injuries, the subject of inquiry is the nature of the duty or service in which the superintendent of streets was engaged at the time of the accident, questions which have no tendency, or at least a very remote one, to throw light on that matter, are rightly excluded.

TORT, under the employers' liability act, St. 1887, c. 270, for the conscious suffering and death of the plaintiff's intestate. Trial in the Superior Court, before *Gaskill*, J., who directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion and in a note by the reporter.

*F. M. Forbush*, for the plaintiff.

*T. E. Grover*, for the defendant.

MORTON, J. As we understand the bill of exceptions, the gravel taken from the pit at the time when the plaintiff's intestate received the injuries which caused his death was used in making ordinary repairs upon Hingham Avenue, a public highway in the defendant town. We also understand that the plaintiff's intestate was engaged in getting out this gravel, and that he was doing it under the direction of the superintendent of streets of the defendant town. It is clear that the superintendent of streets was a public officer. St. 1893, c. 423, §§ 25, 26.

We do not see why, therefore, if there was any negligence on his part, it was not, as the defendant contends, that of a public officer engaged in the performance of a public duty. *Clark* v. *Easton*, 146 Mass. 43. *Pratt* v. *Weymouth*, 147 Mass. 245. *Taggart* v. *Fall River*, 170 Mass. 325. *Mahoney* v. *Boston*, 171 Mass. 427. *Collins* v. *Greenfield*, 172 Mass. 78.

The plaintiff seeks to avoid the effect of the rule thus invoked by attempting to show that the superintendent was engaged as a servant of the town in matters relating to its private benefit and not to its public duty. To do this she relies on the following circumstances. The accident occurred October 7, 1898. There were at the time, in the pit where it occurred, piles of stones, part of which came from that pit and part from other pits. This stone was crushed immediately after the accident for the use of the town. But in November or December following, some of it was used on the line of a street railway located on a highway called Great Plain Avenue, and

the town received from the railway company $325 in cash for such stone. In November, one Mary J. Stone paid the town $14 for a sidewalk constructed for her at about that time; but the gravel used in its construction came from another pit. Also in November another street railway company paid the town $25.50 for repairs made in the May or June previous upon a highway called Central Avenue.

But these circumstances did not show, and had no tendency to show, that the work in which the superintendent was engaged at the time of the accident to the plaintiff's intestate was not the performance of a public duty. As already observed, the gravel which the plaintiff's intestate was getting out was used in making ordinary repairs upon one of the public highways of the town, and there is nothing to show that it had been arranged or was in contemplation that stone should be crushed for use on the line of the street railway company or for any other private use. On the contrary, it is stated that the stone that was in the pit was crushed for the use of the town, meaning, as we understand it, for its public use. The fact that several months before the town had made repairs for a street railway company on a highway for which it was paid in November, had no tendency to show that the work in which the superintendent was engaged at the time of the accident was being done by him in his capacity as an agent of the town rather than as a public officer. Nor did the fact that the town several weeks after used some of the crushed stone on the line of another street railway have any such tendency. The work in which the superintendent was engaged being done by him as a public officer, whatever orders or directions he may have given at the time of the accident are to be regarded as given in that capacity, and not as given in some other capacity, which there is no evidence that he was undertaking to fill.

The questions put to Wright and Henderson were properly excluded.* The subject of inquiry was the nature of the duty

---

* Wright was asked, in direct examination by the plaintiff's counsel, whether or not, at about the time following the accident when the material from the falling bank had been sorted out, he worked on the stone heap.? Also what the gravel was used for which was taken from the pit? And whether or not during that period gravel from the pit was used upon the

or service in which the superintendent was engaged at the time of the accident, and the excluded questions had no tendency, or if they had any tendency it was a very remote one, to throw light on that matter. What use was made of other gravel taken from the pit was immaterial.                *Exceptions overruled.*

---

sidewalks? Henderson was asked, in cross-examination by the plaintiff's counsel: "What has been the custom of the town during your administration as superintendent of streets as to the construction of sidewalks; as to whether a part or the whole of the expense of the construction of sidewalks was charged to abutters?"