ANNIE DAVIES *vs.* CITY OF BOSTON.

Suffolk.    November 24, 1905. — January 4, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Municipal Corporations.    Boston.    East Boston Ferry.    Carrier.*

The city of Boston in operating a ferry with established tolls for the transportation of passengers between the mainland of that city and East Boston under St. 1869, c. 155, is liable as a common carrier to a passenger on a ferryboat owned and operated by it who is injured through the negligence of one of its servants, and the fact that the business of operating the ferry is managed in such a way as not to be profitable to the city is immaterial.

TORT, with a count in contract, for personal injuries sustained by the plaintiff while a passenger on a ferryboat owned and operated by the city of Boston, running between the mainland of that city and East Boston, the plaintiff having paid the regular fare of one cent.    Writ dated March 18, 1903.

At the trial in the Superior Court before *Lawton,* J. there was evidence which warranted the jury in finding that the plaintiff while in the exercise of due care was injured by reason of the negligence of one of the defendant's employees in raising

a gate to permit the passengers to go ashore.  This gate was attached to and worked upon a post set upright in the deck near the end of the boat.  When lowered it extended across the space traversed by passengers when going on board or going ashore.  It was kept raised when they were boarding or leaving the boat, and kept lowered when the boat was making its trip. The accident occurred just after the boat had been made fast on the Boston side at what is known as the North Ferry, when the gate was being raised to permit the passengers to go ashore.

At the close of the evidence the defendant asked the judge to rule as follows:

1. Upon all the evidence a verdict should be directed for the defendant.

2. The city of Boston is not liable to a passenger for injuries sustained by him on a ferryboat of the defendant city plying between the mainland of the city of Boston and the island of East Boston by reason of the negligence of its employees on the boat.

The judge refused to rule as requested, and instructed the jury that the city of Boston was running a ferryboat and was liable as a common carrier of passengers, owing to the plaintiff the same duty it owed to all its passengers to exercise toward them the highest degree of care possible consistent with its undertaking.

The jury returned a verdict for the plaintiff in the sum of $700 ; and the defendant alleged exceptions.

*P. Nichols*, for the defendant.

*C. H. Stebbins*, for the plaintiff.

KNOWLTON, C. J.  The plaintiff, while a passenger on a ferryboat used by the defendant to carry passengers from East Boston to Boston, was injured by the negligence of one of the defendant's servants.  The only question raised by the bill of exceptions is whether the defendant is liable for such an injury.

The defendant contends that its relation to the plaintiff was simply that of an agent of the public, performing strictly public duties, with no commercial element entering into the business in which it was engaged, whether the business is viewed in reference to the plaintiff who paid fare for her passage,.or in reference

to other aspects of the case. The plaintiff contends that the defendant was a common carrier of passengers for hire, and that whatever elements of public interest entered into the service which it was rendering, there was also a commercial element in it which made the defendant answerable upon its contracts with passengers, and liable for damages caused by the negligence of its servants.

. Under the St. 1869, c. 155, the city of Boston purchased of the East Boston Ferry Company, its boats, franchises and other property, and since the purchase it has maintained a ferry with established tolls, for the transportation of passengers. Under the franchise granted by the original act of incorporation, the East Boston Ferry Company was a common carrier of passengers. St. 1852, c. 244, § 2. After the purchase the defendant succeeded to this franchise, and in maintaining and operating the ferry it became a common carrier. St. 1869, c. 155, § 1. The terms of the authority to maintain the ferry, given by this section, are as follows : " in such manner and upon such rates of ferriage as the board of aldermen of said city shall from time to time judge the best interests of the said city to require, excepting only as hereinafter provided." The later provisions of the chapter here referred to are three : first, a provision authorizing the city to maintain the ferry free of tolls if it should think it for its best interests so to do; secondly, a provision permitting it to maintain the ferry under § 5, with greater accommodations and with toll for foot passengers at half the former rate,- and with other rates so reduced that the receipts of the ferry annually should not exceed the cost of operating it; and thirdly, under § 6, an authority to maintain it free from tolls for a term of not less than ten years after the purchase, and then upon such rates of toll as should conform to the requirements of § 5. See *Attorney General* v. *Boston*, 123 Mass. 460, 465. The statute provided for an assessment of betterments upon estates specially benefited, if the city adopted either of these three schemes whereby there would be a reduction of tolls. The city did not think its best interests required the adoption of either of them, but proceeded under § 1, without a reduction of tolls for foot passengers for more than seventeen years. Under this section there was no limitation upon the tolls that it might charge, the

whole matter being left to the board of aldermen, to fix the rates as they deemed best.   There was also a special provision in § 7, allowing the board of aldermen, even if one of the three schemes above mentioned was adopted, to collect such rates of ferriage as they should judge expedient for teams and vehicles passing over the ferry to or from any place beyond the limits of Boston.

In exercising its franchise under this statute the city has not only been acting in the public interest, but it has been engaged in a business into which a commercial element entered.   It furnished the privileges of the ferry for pay to those who used it. As the enterprise was partly commercial in its character, for the purpose of furnishing conveniences to those who would pay for them, the city may be held like any private individual or corporation engaged in a like enterprise.   *Oliver* v. *Worcester*, 102 Mass. 489.   *Worden* v. *New Bedford*, 131 Mass. 23.   *Little* v. *Holyoke*, 177 Mass. 114.   *Neff* v. *Wellesley*, 148 Mass. 487. For many years the rate of toll for foot passengers was the same as previously had been charged by the private corporation.   The fact that the business, as managed, was not profitable to the city does not change its character.   The relation of the city to a passenger on the ferry was similar to that of the East Boston Ferry Company when it owned the ferry.   In an important sense the ferry was maintained before and after the purchase for a public purpose, just as great highways through the country are maintained by railroad corporations for a public purpose which calls for the exercise of the right of eminent domain. But there is a pecuniary and commercial interest involved in the business, which takes form in the contracts made between carriers and passengers, and in other ways.

The maintenance of the ferry under this statute is not unlike the maintenance of waterworks by cities and towns.   This is justified in its requirement of taxation on the ground that the works are established in the interest of the public.   But the dealings of cities and towns with individual water takers are held to create enforceable contracts, and to impose duties, for the neglect of which municipalities are liable.   *Merrimack River Savings Bank* v. *Lowell*, 152 Mass. 556.   *Stock* v. *Boston*, 149 Mass. 410.   So too they are liable for negligence in the performance

of their duties as to construction or maintenance. *Lynch* v. *Springfield,* 174 Mass. 430, 431, and cases cited. *Fox* v. *Chelsea,* 171 Mass. 297.

Although the construction and maintenance of sewers is chiefly in the public interest, it has long been held that a commercial element is involved, which creates a liability in cities and towns for negligence in the performance of the work. *Coan* v. *Marlborough,* 164 Mass. 206, 208, and cases cited.

In *Attorney General* v. *Boston,* 123 Mass. 460, there was much discussion of the question whether that part of the St. 1869, c. 155, which purports to authorize the city to maintain a free ferry at the expense of the taxpayers, is constitutional. The court, on page 469, says that it is unnecessary to decide the question, since the city had never acted under that part of the statute, but had only maintained a ferry with a payment of tolls. This was equivalent to holding that the business in which the city was engaged involved a payment by individuals for the service rendered, which would leave the parties to the contract with the ordinary rights and liabilities of parties to similar contracts.

The city has repeatedly been held liable in cases like the present, although the court has never passed directly upon the question now raised, because it has never before been presented. *Peverly* v. *Boston,* 136 Mass. 366. *Rosen* v. *Boston,* 187 Mass. 245. *Townsend* v. *Boston,* 187 Mass. 283. In the last of these cases it was admitted by the defendant that the city was a common carrier of passengers across the ferry, and the court said, referring to the St. 1869, c. 155, " Under this statute the city could maintain and operate a ferry, in part for profit, and be subject to all the liabilities of a common carrier, although there is alternative authority to use it otherwise."

We are of opinion that the defendant is liable as a common carrier of passengers.

*Exceptions overruled.*