ANTONIO REITANO *vs.* CITY OF HAVERHILL.

Essex. April 9, 1941. — May 26, 1941.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Municipal Corporations*, Liability for tort, Officers and agents. *Public Officer. School and School Committee. Haverhill.*

The school committee of Haverhill, in keeping the "Haverhill stadium" in repair as required by St. 1929, c. 168, were public officers, and the city was not liable for injury negligently caused by a foreman in the city's department of public property while engaged in such repair work for the committee.

TORT. Writ in the Superior Court dated August 23, 1938.

The action was tried before *Beaudreau,* J.

*A. H. Salisbury, 2d, (R. A. A. Comparone* with him,) for the plaintiff.

*W. C. McDonald,* City Solicitor, (*W. S. Soroka* with him,) for the defendant.

DOLAN, J. This is an action of tort to recover compensation for personal injuries, sustained by the plaintiff as a result of the alleged negligence of the "defendant or the person in its service entrusted by it with the duty of superintending the work" upon which the plaintiff was assisting when he was injured. At the close of the evidence the defendant filed a motion for a directed verdict, which

the judge allowed subject to the plaintiff's exception. In directing the jury to bring in a verdict for the defendant the judge stated, in substance, that he was doing so solely because, as matter of law, a municipality is exempt from liability for negligence, "if there is any negligence, in a case of this kind." The case comes before us on the plaintiff's exceptions to the granting of the defendant's motion for a directed verdict and to the exclusion of certain evidence offered to show negligence on the part of the defendant.

The evidence would warrant the jury in finding the following facts: On November 3, 1937, the plaintiff was, and for some time prior thereto had been, receiving relief from the defendant. He was a "'relief worker,' so called," receiving $3 a week, in return for which he performed such work for the defendant as it might direct, at the rate of fifty cents an hour. On the morning of November 3 he reported for work and, under the direction of one Ferretti, a foreman in the defendant's department of public property, accompanied him and "two other persons" to the Haverhill stadium to aid in the repair of one of the stadium gates. The plaintiff and the two "other persons" were expected to obey such orders as Ferretti might give in directing the work. While following Ferretti's orders in assisting in the work the plaintiff was injured. It is unnecessary to recite the details of the accident, since we assume in favor of the plaintiff, for the purposes of the case, that the jury could find that at the time the accident occurred he was in the exercise of due care and that his injuries were caused by the negligence of Ferretti while exercising superintendence. (See *Ryalls* v. *Mechanics' Mills*, 150 Mass. 190, 196.) The plaintiff concedes properly that he was not then an employee of the defendant within the meaning of the workmen's compensation act, the provisions of which applicable to cities had been accepted by the defendant. See *Scordis's Case*, 305 Mass. 94.

Special St. 1918, c. 56, provided for a commission to be known as the "Haverhill Stadium and Athletic Field Commission," to consist of five members, including the mayor

and the president of the school committee *ex officiis,* and three others, each of whom was to be elected annually for a fixed term. The commission was authorized to acquire in the name of the city the land that prior to the enactment of the statute had been leased by the city to the Haverhill High School Athletic Field Association, and the structures thereon, and to hold, manage, control, lease or let the same for the purposes of high school and other athletics and other public events. The statute also provided that the revenue derived from leasing or letting the land should be devoted, first, to the upkeep and maintenance of the land and structures, second, to the payment of interest charges and the retirement of the bonds (authorized to be issued by the statute for the purpose of acquiring the "structures"), and, third, to the enlargement and improvement of the grounds and the development and encouragement of school athletics.

Statute 1929, c. 168, provides as follows: "The school committee of the city of Haverhill shall have sole management and control of the Haverhill stadium and athletic field, so called, including the land and structures thereon, located in said city and to be used for purposes of school and other athletics and public events at which an admission fee may or may not be charged. Said school committee may lease or let said stadium and athletic field for any of the aforesaid purposes upon such terms and conditions as it may determine. All revenue received by said school committee from said stadium and athletic field shall be paid into the treasury of said city. Acting on behalf of said city, said school committee shall collect all money due to, and assume all obligations and debts incurred by, the Haverhill stadium and athletic field commission, established by chapter fifty-six of the Special Acts of nineteen hundred and eighteen."

On January 21, 1930, the school committee voted to rent the stadium to the Haverhill High School Athletic Association at an annual rental of $1 "and other valuable considerations." The association was a voluntary one, "consisting of several members of the faculty of the . . .

High School, among whom was its Athletic Director and Football Coach, the Superintendent of Schools, and a number of high school students. The 'other considerations' . . . were 'that, 'The Haverhill Athletic Association should have the use of the Haverhill Stadium, conduct athletic activities there, hold all the income derived from it, and that from such income it was to pay expenses, . . . and that if there was a surplus after any given year such Athletic Association could retain such amount until it felt it had sufficient on hand to conduct activities for the following year, or the next few years, but if said sum ever became so much that it would be more than sufficient for their needs of conducting athletic contests, then such amount should be turned over to the School Committee, which in turn would go to the general funds of the City of Haverhill and the treasurer for the city treasury of Haverhill.' This arrangement between the School Committee and the Association continued to exist from 1930 to, and has existed since, the date of the plaintiff's injury. It was agreed that the principal sources of income from the Stadium were and are the four or five games played therein by the Haverhill High School football team each year, that four or five thousand people attend each such game, and that the average admission fees charged to spectators were and are twenty-five cents for minors and fifty cents for adults." However, there was evidence that, from 1930 through 1937, annual reports were submitted by the association and that only the one dollar set as the basic yearly rental was ever paid by it to the defendant for the use of the stadium, and that, in addition, the defendant's school committee, which continued to "'have the management of the Haverhill Stadium,' paid out for its maintenance, the sum of $1,513.32 in 1936, and $119.70 in 1937, which sums included the compensation of the 'grounds keeper.'" All receipts taken in from the high school athletics are handled by the athletic association. Since 1935 the stadium has been "operating at a deficit." During the summer time it "is rented gratis to a number of twilight league baseball teams. No charge is made. The only conditions are it be properly policed,

and that suitable use should be made of the facilities there, and that the grounds keeper should be paid, the custodian."

The right of sole control and the duty of management including the maintenance of the stadium having been conferred and imposed upon the school committee by the Legislature, it is settled that in their exercise and performance the members of the committee act as public officers. It is also settled that a municipality can exercise no direction or control over those whose duties have been defined by the Legislature, and that, in the absence of statutory provisions to the contrary, a municipality is not liable for the torts of public officers or for those of their agents or servants acting in the discharge of public duties imposed upon such officers, and this whether the exercise of the authority granted by the Legislature be for profit or otherwise. *Sweeney* v. *Boston, ante,* 106, and cases cited. *Warburton* v. *Quincy, ante,* 111. In the present case the governing statutes contain no provisions to the contrary.

The work upon which the plaintiff was assisting when injured was not one imposed upon the defendant by mandate of the Legislature, and it cannot be said to have been one voluntarily undertaken by the city by permission of the Legislature for profit or to benefit its corporate interest. (See *Bolster* v. *Lawrence,* 225 Mass. 387, 389; *Baumgardner* v. *Boston,* 304 Mass. 100, 107, and cases cited.) On the contrary, the work in question was one over which as matter of law the city had no power of control, and in connection with which it had no duties or obligations. The duty of keeping up and maintaining the stadium was placed by the statute exclusively in the hands of the committee.

It is a fair inference, however, that the work in question was being done through the defendant's department of public property with the consent of the school committee. The work upon which Ferretti and the plaintiff were engaged at the time of the accident, that of repairing the gate to the stadium, was obviously one connected with its upkeep and maintenance, and in its superintendence Ferretti must be taken to have been acting in the right of the committee upon the members of which alone the duty of

maintenance was imposed by the statutes.  See *McDermott's Case*, 283 Mass. 74, 77; *Sweeney* v. *Boston, ante,* 106.  Compare *Sloper* v. *Quincy*, 301 Mass. 20; *Baumgardner* v. *Boston*, 304 Mass. 100, 105.

It follows from what we have said that the defendant is not liable for the torts of Ferretti committed while engaged in the discharge of this public duty, imposed upon the members of the committee as public officers.

*Exceptions overruled.*