CITY OF MALDEN *vs.* WILLIAM F. MacCORMAC.

Middlesex. November 5, 1945. — November 30, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Health, Board of. Public Health. Garbage. Way,* Public: transportation of garbage. *Estoppel. Public Officer. Municipal Corporations,* Officers and agents, Liability for tort.

The defendant in a suit in equity was not estopped to deny the validity of a regulation relied on by the plaintiff by the mere fact that his counsel, in a colloquy with the judge at the beginning of the hearing, at first admitted the validity of the regulation, where later in the colloquy he withdrew from that position and informed the judge that he contended that it was invalid and the judge thereupon permitted him to make an offer of proof in support of such contention.

A regulation made by the board of health of a city in 1944, that no person, firm or corporation other than the city or its contractors and agents should "carry, convey, or transport" any kitchen swill or garbage through the streets of the city, was invalid.

A city was not liable in damages for a refusal of its board of health to grant a permit even if such refusal was based on an invalid regulation adopted by the board; the members of the board were public officers and not agents of the city.

BILL IN EQUITY, filed in the Superior Court on March 2, 1944.

The suit was heard by *Broadhurst,* J.

*J. W. Eastman,* for the defendant.

*B. Kaplan,* City Solicitor, for the plaintiff.

RONAN, J.   The city of Malden brought this bill in equity
on March 2, 1944, to enforce a regulation of the board of
health passed on February 8, 1944, which in effect pro-
vided that no person, firm or corporation other than the
city or its contractors and agents should "carry, convey,
or transport" through the streets of the city any kitchen
swill or garbage.   The bill was amended by adding allega-
tions that the defendant on June 15, 1944, had entered into
a contract with the city to purchase until January 1, 1945,
garbage from the city at a certain hopper owned by the
city; that the street and water commission of the city had
passed a regulation on February 10, 1944, forbidding any
person, except employees of the street and water depart-
ment and persons authorized by the commission, to "re-
move or transport garbage" through the streets of the city
"without first obtaining a permit from the board of health
and the street and water commission"; that the board and
the commission in June, 1944, had granted permits to the
defendant to transport garbage from this hopper through
the streets of the city en route to Peabody where the de-
fendant had a piggery; and that the defendant in violation
of the regulation of the commission was removing and trans-
porting garbage from places in the city other than from the
hopper.   The defendant admitted that he was transporting
garbage as alleged but denied the validity of the regulations
of the board and the commission, and filed a counterclaim
for damages.   The defendant appealed from a final decree
entered on November 14, 1944, enjoining him from collect-
ing, removing or transporting garbage through the streets
of the city, except that, until December 31, 1944, he might
transport garbage from the city hopper en route to Peabody.
This decree also dismissed the counterclaim.

At the beginning of the trial the judge, in an endeavor to
ascertain the facts that the parties could agree upon, dis-
cussed the suit at considerable length with counsel.   Counsel
for the defendant at first admitted the validity of the regu-
lation of the board of health, but later in this discussion he
withdrew from this position and informed the judge that he
contended that the board of health had no authority to

pass this regulation and that the regulation was unreasonable, and in response to an inquiry by the judge he made an offer of proof to support his contention that the regulation was unreasonable. Counsel, we think, could change his position during this preliminary discussion. If the consent of the judge was required, that was impliedly given when counsel was given an opportunity to make an offer of proof. The trial thereafter apparently proceeded on the basis that one of the issues was the validity of the regulation. We see nothing in these circumstances that estops the defendant from challenging the validity of the regulation of the board. *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 252–253. *Levenson* v. *Ruble*, 307 Mass. 562, 565. *McGeorge* v. *Grand Realty Trust, Inc.* 316 Mass. 373, 377.

Even if we assume in favor of the city that the permit granted by the board in June, 1944, merely authorized the defendant to transport garbage from the city hopper and that it expired on January 1, 1945, yet the bill cannot be maintained to enforce this regulation. This is settled by *Malden* v. *Flynn, ante,* 276. The remedies available to the city on both the criminal and civil sides of the court are there pointed out. The collection of garbage from premises in Malden could not be lawfully or effectually carried out unless one had a permit under G. L. (Ter. Ed.) c. 111, § 31A, as inserted by St. 1937, c. 282, and unless the work was done in accordance with the rules and regulations of the board of health made in accordance with § 31B, inserted by said c. 282. It was accordingly held in *Malden* v. *Flynn, supra,* that control over the collection and transportation of garbage was conferred upon the board of health by said §§ 31A and 31B. This construction of § 31A has been confirmed by the enactment, since that decision, of St. 1945, c. 423, which makes a distinction between the transportation of garbage collected in a city and the transportation of garbage through a city other than the one in which it was collected.

We need not decide whether the commission had authority to pass the regulation of February 10, 1944, notwithstanding the specific statutory power conferred upon boards

of health over the transportation of garbage, see now G. L. (Ter. Ed.) c. 111, §§ 31A, 31B, St. 1945, c. 423, if that regulation stood alone. See G. L. (Ter. Ed.) c. 40, §§ 4, 21 (1). Compare *North Reading* v. *Drinkwater*, 309 Mass. 200. But a person having no contract with the city cannot obtain a permit from the commission "without first obtaining a permit from the board of health," which he cannot obtain on account of the regulation of the board that purports to bar it from granting a permit to such a person to "carry, convey, or transport" garbage through the streets of the city. The fact is that the commission can never exercise its discretion and grant a permit to such a person so long as the board of health considers itself bound by its regulation to deny permits to all such persons. The regulation of the commission is so inextricably connected with this invalid regulation of the board that the former is tainted with the same vice as the latter when applied to a case like the present and cannot in such instances be enforced.

The defendant has no right to obtain damages from the city. It appears that the parties had entered into a stipulation by which the defendant was not to be interfered with during the pendency of the present suit. It is difficult to see how he has sustained any damage; but if he did, the gist of his complaint is the action of the board in refusing to consider his application for a permit. It does not however follow that, if the application was considered on its merits by the board, a permit would have been granted. *Malden* v. *Flynn, ante,* 276, 279. In any event, the city is not liable for the actions of the board whose members act as public officers and not as agents of the city. *Harrington* v. *Worcester,* 186 Mass. 594. *Attorney General* v. *Stratton,* 194 Mass. 51. *Breault* v. *Auburn,* 303 Mass. 424. *Gibney* v. *Mayor of Fall River,* 306 Mass. 561, 565.

The final decree is reversed and a decree is to be entered dismissing the bill and the counterclaim.

*So ordered.*