MORASH & SONS, INC. *vs.* COMMONWEALTH.

Suffolk.    November 9, 1972. — May 14, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Governmental Immunity. Nuisance. Commonwealth,* Liability for nuisance. *Real Property,* Nuisance. *Municipal Corporations,* Liability for tort. *Actionable Tort.*

The Commonwealth is not immune from liability for the creation or maintenance of a private nuisance which causes injury to the real property of another. [616, 619]

This court rejected the assumption in *Troy & Greenfield R. R.* v. *Commonwealth,* 127 Mass. 43, and in *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, that the consent of the Commonwealth to suit is derived only from the Legislature, but accepted the conclusion of the *Murdock Parlor* case that the consent incorporated in G. L. c. 258, § 1, does not extend to tort claims. [614–616]

Discussion of the judicially created immunity of the Commonwealth and of its municipalities from tort claims. [616–619, 620–623]

This court refrained from abolishing the doctrine of governmental immunity from suit because the comprehensive approach available to the Legislature is the preferable course. [623–624]

BILL IN EQUITY filed in the Superior Court on October 14, 1970.

The case was heard by *Cahill, J.*

*Charles P. Burgess* for the plaintiff.

*Christopher H. Worthington,* Assistant Attorney General, for the Commonwealth.

HENNESSEY, J. This is a petition in equity brought against the Commonwealth by Morash & Sons, Inc. (the corporation), seeking to enjoin the Commonwealth from storing road salt on State property and seeking damages resulting from the pollution of the corporation's water supply by such storage.

The Superior Court judge heard evidence only on the issue of liability but then, failing to pass on the merits, dismissed the petition, ruling that the doctrine of sovereign immunity was a complete defence to the action. The corporation appeals from this dismissal. Since the dismissal has the procedural effect of sustaining a demurrer, we assume as true the facts alleged by the corporation.

The corporation owns 21.46 acres of land located on Lawrence Street, Northborough. There is a single family dwelling and a building containing an office and warehouse on this land. The property was purchased in 1969, and is the principal place of business of the corporation.

South of and adjacent to the property of the corporation are three parcels of land owned by the Commonwealth which the Department of Public Works (D. P. W.) uses as a storage and maintenance depot. The D. P. W. has stored road salt in open piles on this land for almost fifty years, protected until recently by temporary coverings only.

The water supply for the dwelling house, office, and warehouse is from two separate wells on the corporation's property. The normal course of water drainage in the area is from south to north, and therefore, drainage from the salt piles has infiltrated and polluted the corporation's water supply. Water from its pipes is undrinkable, unfit for bathing, washing dishes or clothes, and

because of the corrosive effect of the salt solution, the pipes, fittings and fixtures are ruined. While the corporation has notified the D. P. W. of this pollution, the D. P. W. has refused to acknowledge responsibility and has refused to take corrective action.

The corporation argues that the Commonwealth's use of its land constitutes a private nuisance. The issue is whether the Commonwealth as an owner of or in control of real property can be liable for creating or permitting a private nuisance to the real property of another. The corporation contends that (1) the Commonwealth abrogated its sovereign immunity in tort as well as contract actions by the express provisions of G. L. c. 258, § 1; (2) municipalities of the Commonwealth are liable for private nuisances and there is no logical reason why the Commonwealth should not also be liable for private nuisances; and (3) as a matter of sound public policy, whatever residual immunity of the Commonwealth from tort liability now exists should be abrogated. On the other hand, the Commonwealth argues that it cannot be sued in tort except with its consent as expressed by a statute, and that G. L. c. 258, § 1, is not an expression of such consent.

Consistent with the corporation's contention (2) above, we hold that, just as in the case of its political subdivisions, the Commonwealth is not immune from liability if it creates or maintains a private nuisance which causes injury to the real property of another.

1. The corporation argues that the Commonwealth waived its sovereign immunity in tort as well as contract by the express provisions of G. L. c. 258, § 1, which states in relevant part, "The superior court, except as otherwise expressly provided, shall have jurisdiction of all claims at law or in equity against the commonwealth." Whether this statute is merely jurisdictional as we suggested in *Smith* v. *Commonwealth*, 347 Mass. 453, 456, or whether it incorporates a limited waiver by the Commonwealth of its sovereign immunity as we held in *R. Zoppo Co. Inc.* v. *Commonwealth*, 353 Mass. 401, 404, is irrelevant since the providing of a forum to hear claims

against the Commonwealth would be a meaningless gesture unless it assumed that the Commonwealth is not immune to at least some suits. Compare 28 U. S. C. § 1346 (b) (1970), with 28 U. S. C. § 2674 (1970). See, generally, Davis, Administrative Law Treatise, § 25.06, fn. 10. The case of *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, has defined the extent of that statutory waiver in this Commonwealth for nearly eighty-three years. The well-spring of that case was the case of *Troy & Greenfield R.R.* v. *Commonwealth*, 127 Mass. 43, 46, where we said without reference to prior authority in point that "[i]t is a fundamental principle of our jurisprudence, that the Commonwealth cannot be impleaded in its own courts, except by its own consent clearly manifested by act of the Legislature." In the face of the contention that "all claims" as used in St. 1887, c. 246, the predecessor to G. L. c. 258, § 1, included tort claims, the court in the *Murdock Parlor* case, *supra*, examined the legislative history of the statute in question. Since Pub. Sts. c. 195, § 1, referred to "all claims against the Commonwealth which are founded on contract," the court held that St. 1887, c. 246, which gave to the Superior Court "jurisdiction of all claims against the Commonwealth, whether at law or in equity," did not extend the waiver to tort claims, but merely expanded the extent of waiver to additional contract claims. Since the court assumed that the extension of any waiver must come from the Legislature, it ruled that if the Legislature had intended to extend liability to tort claims, "it certainly would have done so in express terms," 152 Mass. at 32, and therefore the plaintiff's contention in that case failed.

Since sovereign immunity is a judicially created common law concept, we reject the assumption of the *Troy* case, *supra*, 127 Mass. 43, and the *Murdock Parlor* case, *supra*, 152 Mass. 28, that the consent of the Commonwealth to suit may be derived only from the Legislature. The cases cited for this proposition in the *Troy* case refer to the rule that suits against the United States cannot be maintained without an act of Congress, and are therefore

distinguishable. *The Davis,* 10 Wall. 15, 19. *Carr* v. *United States,* 98 U. S. 433, 437. However, we accept the conclusion of the *Murdock Parlor* case that the consent incorporated in G. L. c. 258, § 1, does not extend to tort claims.

2. We agree with the corporation's second argument that municipalities of Massachusetts are liable for private nuisances and there is no logical reason why the Commonwealth should not be similarly liable. Municipal liability for private nuisances arises from a court made exception to the rule of governmental immunity, viz.: Where a municipality is the owner of or in control of real estate and creates or permits a private nuisance to the real property of another, it is liable in a common law action just as a natural person would be. *Lawrence* v. *Fairhaven,* 5 Gray 110. *Miles* v. *Worcester,* 154 Mass. 511. *Towner* v. *Melrose,* 305 Mass. 165, 168. This liability attaches even where the nuisance arises out of the performance by the municipality of a governmental duty. *Wershba* v. *Lynn,* 324 Mass. 327, 333. *Kurtigian* v. *Worcester,* 348 Mass. 284, 287–288.

The Commonwealth argues that logic does not indicate an extension of this exception to cases against the Commonwealth because the immunity of the municipality rests upon a different basis than does the immunity of the Commonwealth. However, we conclude that, while it is true that there is a distinct difference in the legal basis, the difference is of no significance in our reasoning here. The separate reasons why the rule of immunity was established for the municipality, on the one hand, and for the sovereign, on the other hand, may have been sound in their inception but they have long since lost their validity. An examination of the origin of the doctrine establishes this conclusion.

The immunity of municipalities to tort claims is judge made and first appeared in our law in the case of *Riddle* v. *Proprietors of the Locks & Canals on Merrimack River,* 7 Mass. 169, 187. As was the practice in 1810, this court looked to the English courts for precedent and said,

"counties and hundreds, in *England*; and counties [and] towns . . . in this state . . . are liable to information or indictment, for a neglect of a public duty imposed on them by law; yet it is settled in the case of *Russel & Al.* v. *Inhabitants of the County of Devon* [2 D. & E. 667, 100 Eng. Rep. 359 (1788)] that no private action can be maintained against them for a breach of their corporate duty, unless such action be given by statute. And the sound reason is, that, having no corporate fund, and no legal means of obtaining one, each corporator is liable to satisfy any judgment rendered against the corporation."

While this doctrine appeared in the *Riddle* case as a gratuitous statement, it became a firm holding in *Mower* v. *Leicester*, 9 Mass. 247, 250.

Despite the fact that the reason for the rule no longer obtained (since counties, cities and towns do have corporate funds), we have followed the rule in a long line of cases. See, e.g., *Bigelow* v. *Randolph*, 14 Gray 541; *McKenna* v. *Kimball*, 145 Mass. 555; *Bolster* v. *Lawrence*, 225 Mass. 387; *Molinari* v. *Boston*, 333 Mass. 394.

Emphasis in many cases has been that a municipality is not liable for the tortious acts of public officers and employees working under their direction performing public duties imposed by the Legislature. *Molinari* v. *Boston*, 333 Mass. 394, 395–396. The reasoning here is that there is no local control over the public officer and hence no local responsibility, since "the doctrine *respondeat superior* does not apply to the servants of one who is acting only as a representative of the government, for the benefit of the public." *Moynihan* v. *Todd*, 188 Mass. 301, 304. See *Sweeney* v. *Boston*, 309 Mass. 106; *Warburton* v. *Quincy*, 309 Mass. 111; *Reitano* v. *Haverhill*, 309 Mass. 118. In such cases, in view of the sovereign immunity of the State, neither the municipality nor the State is held responsible.[1] Compare the recent recognition by this

---

[1] See the language in *Reitano* v. *Haverhill*, 309 Mass. 118, 122, which indicates that there is municipal immunity even though the authority granted by the Legislature is for commercial activity by the public officer.

court that a private employer may be held responsible for injuries caused by his employee in the negligent operation of a motor vehicle even though, by the usual criteria, the employer had no control over the manner in which the vehicle was to be operated. *Konick* v. *Berke, Moore Co. Inc.* 355 Mass. 463, 468.

The doctrine of sovereign immunity upon which the Commonwealth relies was likewise court made. It appears in early Massachusetts cases (*Commonwealth* v. *Heirs of Andre,* 3 Pick. 224, 225; *Briggs* v. *Light-Boat Upper Cedar Point,* 11 Allen 157, 174; *Troy & Greenfield R.R.* v. *Commonwealth,* 127 Mass. 43, 46) but its true origin lies much earlier in the prerogatives of the monarchy as expressed in the English common law. It has been expressed in the words, "The king can do no wrong," [2] and is said to be justified because of "[t]he inherent nature of sovereignty." *Employees of the Dept. of Pub. Health & Welfare, Mo.* v. *Department of Pub. Health & Welfare, Mo.* 411 U. S. 279, 288, (concurring opinion), quoting from *Great No. Life Ins. Co.* v. *Read,* 322 U. S. 47, 51. Scholarly treatises [3] have suggested that the doctrine is an anachronism in American law, but despite its tautological justification, the doctrine continues to enjoy current vitality. See the *Employees* case, *supra,* for three divergent views on the relationship between sovereign immunity and the Eleventh Amendment to the United States Constitution as a restriction on Federal judicial power.

Thus while municipal and sovereign immunity purport to rest upon separate grounds, they are said by many courts to share a common trait: they are logically indefensible. The courts in some jurisdictions have abolished the doctrine of governmental immunity entirely. See, e.g., *Stone* v. *Arizona Hy. Commn.* 93 Ariz. 384; *Muskopf*

---

[2] Blackstone, Commentaries (1783 ed.) 246.

[3] See, e.g., Davis, Administrative Law Treatise, § 25.01, p. 435, and articles cited.

v. *Corning Hosp. Dist.* 55 Cal. 2d 211; *Molitor* v. *Kaneland Community Unit Dist. No. 302*, 18 Ill. 2d 11; *Campbell* v. *State*, 259 Ind. 55. See also Davis, Administrative Law Treatise (1970 Supp.) § 25.00. All other jurisdictions have eroded the immunity by both statutory exceptions and judge made exceptions.

We are not reluctant to extend the specific doctrinal exception here from the municipality to the Commonwealth, since there is no logical reason why we should not do so. On the contrary, the appeal to justice which created the exception in the one instance supports its application in the other. We disagree with the Commonwealth's argument that it cannot be sued without legislative consent. Since governmental immunity is a judicially created concept, it can be discarded by the courts and we do so now to the limited extent of holding that the Commonwealth is not immune from liability if it creates or maintains a private nuisance which causes injury to the real property of another. We reach this conclusion because what we said about municipalities applies with equal force to the Commonwealth: "Public policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and, particularly in an urban area, that there be no oases of nonliability where a private nuisance may be maintained with impunity." *Kurtigian* v. *Worcester*, 348 Mass. 284, at 291.

3. Since the foregoing conclusion entitles the corporation to a trial of its case on the merits, it is not necessary for us to consider the final argument of the corporation, viz.: that the doctrine of governmental immunity from tort liability should be totally abrogated. Nevertheless, it is appropriate for us to discuss the argument, in view of our statement, *supra*, that the immunity doctrine is logically indefensible. Further discussion is also indicated because we have in this case carved out a new exception to the immunity doctrine despite our apprecia-

tion, as shown below, that the exceptions created by the courts are based upon doubtful legal reasoning.

First of all, we observe that the immunity doctrine has served to prevent recovery in a large and varied line of cases.[4]   Cases are collected in Hardy, Municipal Law & Practice, §§ 1051–1063.   A few exceptions to the doctrine have been established by statute.   For example, recovery is permitted against a municipality for damages caused by riots (G. L. c. 269, § 8), by unlawful exclusion from public schools (G. L. c. 76, § 16), and by defects in the highways (G. L. c. 84, § 15; G. L. c. 229, § 1).   Less direct but just as effective relief for injured persons has been provided by statutes which permit towns to purchase insurance policies to indemnify employees against loss arising from certain claims against them (G. L. c. 40, § 5); which permit cities and towns to indemnify officers and employees against claims arising against them by reason of their operation of municipal vehicles within the scope of their governmental duties (G. L. c. 41, §§ 100A, 100D); and which permit cities and towns to indemnify school department employees by reason of claims arising out of acts performed within the scope of their employment (G. L. c. 41, § 100C).   See *Desmarais* v. *Wachusett Regional Sch. Dist.* 360 Mass. 591, 594, which held that the enactment of G. L. c. 40, § 5 (1), and G. L. c. 41, § 100C, did not constitute a legislative waiver of governmental immunity as to school departments.

Most exceptions to the doctrine are judge made.   Thus many cases have established that a municipality may be

---

[4] *Murphy* v. *Needham,* 176 Mass. 422 (negligent repair of street). *Hathaway* v. *Everett,* 205 Mass. 246 (fraudulent tax assessment). *Leary* v. *Newburyport,* 216 Mass. 225 (negligent maintenance of tree). *Myers* v. *Boston,* 247 Mass. 36 (negligent damage by park official to concessionaire's chairs).   *Auger* v. *New Bedford,* 265 Mass. 327 (negligence of tax collector).   *Abihider* v. *Springfield,* 277 Mass. 125 (negligence of fire department).   *Anglim* v. *Brockton,* 278 Mass. 90 (negligent diversion of water onto private property).   *Galassi Mosaic & Tile Co.* v. *Boston,* 295 Mass. 544 (misrepresentation). *Malden* v. *MacCormac,* 318 Mass. 729 (refusal to grant garbage permit).   *Molinari* v. *Boston,* 333 Mass. 394 (negligent maintenance of school steam radiator).   *Boyce* v. *Templeton,* 335 Mass. 1 (failure to post warning on discontinued way).

held liable for the negligence of its employees who are engaged in commercial activities of the city.[5]   The underlying test applied is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit.   *Bolster* v. *Lawrence,* 225 Mass. 387, 390.   If it is, there is no liability; if it is not, there may be liability.

In some cases which have emphasized that a city or town, in the absence of statutory provisions to the contrary, is not liable for the torts of public officers whose duties have been established by the Legislature, liability has again been established by exceptions.   It has been held that a city or town may be held liable where it directs that work shall be done by persons other than those who have the statutory duty to perform it.   *Ryder* v. *Lexington,* 303 Mass. 281.   Liability may also arise where the municipality chooses to instruct the public officer as to the manner in which he is to perform his duties.   *Ryder* v. *Taunton,* 306 Mass. 154, 159.

It can fairly be said that there has been an inversion of the law here.   The customary rule is that if there is tortious injury there is liability, and exceptions may be created to the rule of liability.   The inverted rule here creates an immunity, and establishes liability by exceptions.   These in turn are grounded in factors that have no necessary relationship to accepted tort principles, equitable principles, or principles of sound public policy.   An injured person, for example, may recover against a city or town because of the fortuitous circumstance that the injury was caused by the activity of water department employees (*D'Urso* v. *Methuen,* 338 Mass. 73), rather than by fire department employees.   *Pettingell* v. *Chelsea,* 161 Mass. 368.

---

[5] *Neff* v. *Wellesley,* 148 Mass. 487 (management of farm).   *Manning* v. *Springfield,* 184 Mass. 245 (negligent construction, maintenance and repair of sewers).   *Duggan* v. *Peabody,* 187 Mass. 349 (operation of stone crusher).   *Davies* v. *Boston,* 190 Mass. 194 (operation of a ferry).   *O'Donnell* v. *North Attleborough,* 212 Mass. 243 (maintenance of lighting plants).   *Davis* v. *Rockport,* 213 Mass. 279 (leasing beach front lots).   *A. DaPrato Co.* v. *Boston,* 334 Mass. 186 (maintenance of water system).

In other cases a number of fine distinctions have been spun out from the stated exceptions to discriminate among the claims of injured persons with emphasis, not on accepted tort principles, but on principles related to municipal finance and management, contracts and accounting. As the distinctions become more refined, their relevance becomes more questionable. It has been said of similar rules in another jurisdiction that they are "as logical as those governing French irregular verbs." *Weeks* v. *Newark,* 62 N. J. Super. 166, 178, affd. 34 N. J. 250, quoting from Seasongood, Municipal Corporations: Objections to the Governmental or Proprietary Test, 22 Va. L. Rev. 910, 938. Thus, an activity need not yield a profit to be considered commercial within the exception (*Davies* v. *Boston,* 190 Mass. 194, 197), but municipal liability does not arise from a governmental enterprise from which the city derives only insignificant revenue. *Baumgardner* v. *Boston,* 304 Mass. 100, 108–109. *Chaffee* v. *Oxford,* 308 Mass. 520. Where, however, the revenue realized was relatively insignificant as compared to the entire cost of collecting refuse, and yet the active revenue was realized as a levy upon the collection of refuse from a particular class of citizens in the community, the municipality was held legally responsible for the negligent conduct of its servant in the operation of its vehicle while engaged in the collection of refuse of the class for which a charge was made. *Baumgardner* v. *Boston,* 304 Mass. 100.

There are further refinements. Ordinarily, under the recognized exceptions a city or town is responsible for negligence which occurs in construction or maintenance of sewers (*Green* v. *West Springfield,* 323 Mass. 335; *Carlo* v. *Pittsfield,* 339 Mass. 624) but not in every case. *O'Hearn* v. *Adams,* 288 Mass. 185. No municipal liability for negligence ordinarily arises out of highway repairs or maintenance as in the case of maintenance of a traffic light pole (*Whalen* v. *Worcester Elec. Light Co.* 307 Mass. 169) but work relating to street lights can give rise to liability upon the premise that one of the pur-

poses of such activity is to guard against the statutory liability that might exist for accidents caused by highway defects. *Sullivan* v. *Holyoke*, 135 Mass. 273. *Dickinson* v. *Boston*, 188 Mass. 595. Ordinarily, there is no immunity for water department work (*Sloper* v. *Quincy*, 301 Mass. 20) but this rule is not invariable. *Tainter* v. *Worcester*, 123 Mass. 311. *Reynolds Boat Co. Inc.* v. *Haverhill*, 357 Mass. 668.

The judge made exceptions reflect a partial and piecemeal adjustment by the courts of a doctrine that, if applied in all cases indiscriminately, would bring about some unjust results. We have shown that the exceptions, born of expediency, are not based upon sound legal principles or sound public policy. There are persuasive reasons why the governmental immunity doctrine applicable to the Commonwealth and its subdivisions should be abolished. We conclude that there are also good and controlling reasons why, at this time, this court should not abrogate the doctrine. Preferably the change should be accomplished by legislation.

Clearly, there should be limits to governmental liability and exceptions to the rule of liability, based upon considerations of justice and public policy.[6] We believe the Legislature should be afforded an opportunity to do this by a comprehensive statute. If immunity is abrogated by the court, limits and exceptions must be established in good order thereafter by an attenuated case by case process.

As has been said, many jurisdictions have abrogated immunity by court ruling. See cases cited in part 2 of this opinion, *supra*. However, the need for limits on the liability of governmental units is generally recognized, even where immunity is judicially abrogated. See, e.g., *Campbell* v. *State*, 259 Ind. 55, at 62–63. See also Davis, Administrative Law Treatise, § 25.11; Prosser, Torts

---

[6] Exceptions and limits to liability will avoid the "potentially catastrophic financial burden" which the Supreme Court of New Hampshire cited as a reason why the doctrine of immunity should not be abrogated. See *Gossler* v. *Manchester*, 107 N. H. 310, 314–315.

(4th ed.) § 131. Indeed, in some States where immunity was judicially discarded, the respective State Legislature enacted tort claim acts. See, e.g., the California Tort Claims Act of 1963 (St. 1963, c. 1681; Gov. Code, § 810 et seq.) and *Nestle* v. *Santa Monica*, 6 Cal. 3d 920, 932; the Local Government and Governmental Employees Tort Immunity Act (Ill. Rev. Sts. 1966, c. 85) and *Arnolt* v. *Highland Park*, 52 Ill. 2d 27, 30–31. A legislative approach is preferable. For example, we refer to the Federal Tort Claims Act (28 U. S. C. §§ 2671–2680 [1970]) and its statutory exceptions to liability (28 U. S. C. § 2680 [1970]), such as wrongs arising from discretionary (as distinguished from ministerial) acts of government workers, and wrongs caused by the wilful conduct of such employees.[7] We have no doubt as to the advisability of abolishing the rule of government immunity as applied to the Commonwealth and its political subdivisions, and we have no doubt as to our power to abolish that doctrine. We refrain at this time, not merely because we have accepted the doctrine for many years, but because the comprehensive approach available to the Legislature is the preferable course.

4. The decree dismissing the petition is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[7] An analogous Massachusetts rule is that public officers engaged wholly in the performance of public duties are personally liable only for their own acts of misfeasance in connection with ministerial matters. *Moynihan* v. *Todd*, 188 Mass. 301, 303, 305. *Fulgoni* v. *Johnston*, 302 Mass. 421, 423. *Trum* v. *Paxton*, 329 Mass. 434, 438. *Desmarais* v. *Wachusett Regional Sch. Dist.* 360 Mass. 591, 593.